**Pas P. TORRES, Jr., Plaintiff-Appellant,**

v.

**FIRST STATE BANK OF SIERRA COUNTY, a New Mexico Banking Corporation, Defendant-Appellee.**

No. 77–2055.

United States Court of Appeals, Tenth Circuit.

Submitted July 21, 1978.

Decided Dec. 18, 1978.

---

8. *See Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d at 245.

Frederick A. Smith, Truth or Consequences, N. M., for plaintiff-appellant.

George J. Hopkins of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., for defendant-appellee.

Before SETH, Chief Judge, and BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This case was brought pursuant to 42 U.S.C. § 1983 to recover for alleged deprivation of property rights and conversion. The trial court granted a motion by the defendant First State Bank of Sierra County (First State) to dismiss for failure to state a claim. The plaintiff Pas P. Torres, Jr. (Torres) appealed, and this court in *Torres v. First State Bank*, 550 F.2d 1255 (10th Cir. 1977), reversed and remanded for further proceedings. On remand, the trial court held a hearing on the issue of whether state action was involved, pursuant to First State's motion for summary judgment. Finding insufficient state action for subject matter jurisdiction under § 1983, the trial court granted summary judgment in favor of First State. Torres has appealed.

Torres operated a Chrysler automobile dealership, Sombrero Motors, in Truth or Consequences, New Mexico. In that capacity he obtained financing through First State, giving back various promissory notes. In January 1975 the bank made demands for payment. When it did not receive such payment, deeming itself insecure the bank filed a complaint in a New Mexico state court, seeking to declare seven promissory notes to be in default and immediately payable, requesting exemplary damages, and declaring its right to immediate possession of nine vehicles and one boat in which it had a security interest. The promissory notes permitted First State to repossess the cars upon default of Sombrero Motors.

The problem involved in this case arises because First State also requested a temporary restraining order to prevent Torres from disposing of any property he then owned. First State posted a' $2,500 bond and obtained an *ex parte* temporary restraining order expiring in eleven days, at which time a hearing was to be held to determine whether a temporary injunction should issue pending outcome of the primary suit.

Travis Waller, an officer of the bank, accompanied a county deputy sheriff to Sombrero Motors' office, and the deputy

served the summons, restraining order and other papers on Torres. The deputy testified that he told Torres he had "a civil complaint for him, and part of it was a restraining order, and to read the restraining order." He said nothing about the keys or possession of the cars, and made no representations about the content of the court's order. While the bank officer and Torres conferred the deputy sheriff visited with a mechanic on the premises.

The restraining order, issued under N.M. Stat.Ann. § 21–1–1(65)(b) did not order surrender of any property, but restrained Torres, his agents, servants and employees, from "disposing of, conveying, or encumbering any property, real or personal, presently owned by him." Torres contends that the bank officer, Waller, demanded the keys to the cars and indicated that the papers served gave him the right to the cars on the lot. Waller asserts that Torres voluntarily turned over to him possession of the keys and automobiles, and that the contents of the temporary restraining order were not misrepresented. Torres assisted in the removal of one car that stalled enroute to the relocation lot, and it is agreed that First State only repossessed those vehicles in which it had a perfected security interest.

Torres' landlord locked the doors on the business the following day, asserting a landlord's lien to cover unpaid rent. Torres assumed he could no longer continue to operate the dealership nor dispose of any of his assets, and it is undisputed that he did cease operating Sombrero Motors. At the state court hearing on January 27 the bank's application for a writ of replevin was withdrawn by the bank, since it already had obtained possession of the vehicles, and no attempt was made to extend the order with respect to other assets of Torres.

Two elements are necessary for recovery under 42 U.S.C. § 1983. As succinctly stated in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970):

> First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show the defendant acted "under color of law."

Since the trial court declared that there was insufficient state action for subject matter jurisdiction we consider that issue.

The action taken here to obtain the temporary restraining order was under N.M. Stat.Ann. § 21–1–1(65)(b), which is identical to Fed.R.Civ.P. 65(b) with one minor exception.[1]

1. § 21–1–1(65)(b) reads as follows; the italicized language does not appear in Fed.R.Civ.P. 65(b).

A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed ten [10] days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period, except that, if a party adverse to the party obtaining a restraining order shall disqualify the judge who would otherwise have heard the matter, then the order shall be deemed extended until ten days after the designation of another judge *or until such earlier time as may be fixed by the judge so designated.* The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary

The lower court's order states that the constitutionality of that Section is not challenged. But Torres' attack on the order is based upon the line of Supreme Court decisions commencing with *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)[2] which did involve the constitutionality of state statutes allowing seizure of debtor's property without notice and hearing. He does not distinguish between the order and the statute under which it was made. Therefore we consider his complaint as directed toward both.

Neither the New Mexico Statute nor Fed. R.Civ.P. 65(b) has been before the courts on the question of constitutionality since *Sniadach* was decided.[3] That section is not confined to creditors' suits but is a procedural rule which applies to a wide variety of litigation situations. Under its terms any *ex parte* restraining order must be made by a judge. The order must define the injury, state why it is irreparable and why the order was granted without notice. It must expire by its own terms in not to exceed 10 days. On two days' or such shorter notice as the court prescribes the adverse party may appear and move its dissolution or modification, which the court shall hear "as expeditiously as the ends of justice require."

■ *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), held that in some circumstances at least a statute may grant an *ex parte* seizure order in a debtor-creditor situation, when an immediate post-seizure hearing is available. We think the statute here involved has the safeguards necessary to meet the *Mitchell*

tests and satisfies the due process requirements of the Constitution.

Torres attacks the *order* of the state court, arguing that it violates his rights of procedural due process because it prohibited him from dealing with any of his assets, not just those in which the bank had a security interest, and was issued without giving him notice and an opportunity to be heard. Indeed there are serious problems with the order. In the one case in which the Supreme Court has permitted a post-seizure hearing, reliance was placed upon the security interest which the creditor retained in the assets involved. Here there was no such security interest except in the automobiles and one boat. Of course, here the order did not authorize the creditor to take possession, it simply prohibited the debtor from disposing of the asset. In *Sniadach v. Family Finance Corp.*, *supra*, however, the garnishment which was struck down did not transfer assets to the creditor, but rather enjoined the employer from paying them to the debtor wage earner.

Assuming, without deciding, that the court's order violated Torres' rights to procedural due process, there still must be action "under color of law" to make his claim cognizable under 42 U.S.C. § 1983. This litigation was between two private parties, in the state court, and the § 1983 claim is asserted only against the bank. Is there state action simply because in litigation in a state court that court exercised its authority to issue an order which we assume to be wrong and which did not give the debtor his rights to procedural due process? In answering the question it is important to con-

restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On two [2] days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event, the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

2. The others are *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell*

*v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). *See also, Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

3. *United States v. Shaheen*, 445 F.2d 6, 10 (7th Cir. 1971) involving Fed.R.Civ.P. 65(b) does cite *Sniadach* and appears to assume that rule is constitutional. *See also*, 11 Wright & Miller, Federal Practice and Procedure: Civil § 2951, at 505–506 (1973).

sider what this case is not. It is not a situation where an unconstitutional statute, regulation or custom is being enforced by the state courts. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nor is this a case where a private contract furthering discrimination or other unconstitutional conduct is being enforced by the courts. *See Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). This does not involve a state officer using his authority, or the appearance thereof, outside the scope of his statutory duties. *Compare Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) *with Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

This is a case where private parties only were involved in state court litigation and it is alleged that the order granted by the court is not only erroneous but infringes one party's rights to procedural due process. While the Supreme Court has not yet ruled on this situation, *see Stump v. Sparkman*, 435 U.S. 349, 364 n. 13, 98 S.Ct. 1099, 1109, 55 L.Ed.2d 331 (1978), many circuit courts have done so. *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno*, 547 F.2d 1 (1st Cir. 1976) is the only one we found which supports a finding of jurisdiction. And that opinion contains no discussion of the issue. Many other cases have held to the contrary. *E. g., Hill v. McClellan*, 490 F.2d 859, 860 (5th Cir. 1974) ("There is no cause of action under the Civil Rights Act if a case is private litigation in which the state does no more than furnish the forum and has no interest in the outcome.") *See also, Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66 (2d Cir.), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Henry v. First Nat'l Bank*, 444 F.2d 1300 (5th Cir. 1971), *cert. denied*, 405 U.S. 1019, 92 S.Ct. 1284, 31 L.Ed.2d 483 (1972); *Guedry v. Ford*, 431 F.2d 660 (5th Cir. 1970); *Brown v. Dunne*, 409 F.2d 341 (7th Cir. 1969); *Haldane v. Chagnon*, 345 F.2d 601 (9th Cir. 1965); *Skolnick v. Spolar*, 317 F.2d 857 (7th Cir.), *cert. denied*, 375 U.S. 904, 84 S.Ct. 195, 11 L.Ed.2d 145 (1963); *Skolnick v. Martin*, 317 F.2d 855 (7th Cir.), *cert. denied*, 375

U.S. 908, 84 S.Ct. 199, 11 L.Ed.2d 146 (1963); *Hanna v. Home Ins. Co.*, 281 F.2d 298 (5th Cir. 1960), *cert. denied*, 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747 (1961); *Johnson v. Stone*, 268 F.2d 803 (7th Cir. 1959); *Smith v. Village of Lansing*, 241 F.2d 856 (7th Cir. 1957); *Moffett v. Commerce Trust Co.*, 187 F.2d 242 (8th Cir.), *cert. denied*, 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618 (1951).

In fact the leading case is our own *Bottone v. Lindsley*, 170 F.2d 705 (10th Cir. 1948), *cert. denied*, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949). There Judge Murrah said:

It is conceivable that persons, either individually or acting in concert might so use the state judicial process as to deprive a person of his property without due process of law, or of equal protection of the laws, yet we are certain that to make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law. To hold otherwise would open the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision. "The Fourteenth Amendment did not alter the basic relations between the States and the national government." *Screws v. United States*, supra, 325 U.S. 91 at page 109, 65 S.Ct. 1031 at page 1039, 89 L.Ed. 1495, 162 A.L.R. 1330. Nor does it "assure uniformity of decisions or immunity from merely erroneous action * * *." See Justice Frankfurter concurring in *Snowden v. Hughes*, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497. . . .

*Id.* at 707.

■ We do not think that the "color of law" reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, subject to immediate modification by a court having jurisdiction

over the parties, and subject to the normal processes of appeal.

 If it was not state action simply to use the state court, was the involvement of the deputy to serve the temporary restraining order enough to bring it within § 1983? Police officers acting strictly within the scope of their statutory duties are immune from § 1983 claims. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The deputy's testimony, which is not contradicted, is that he merely served the order, asked Torres to read it carefully, and then moved away. His mere physical presence on the premises under these circumstances, we do not consider to constitute state action. Had he colluded with the bank officer to misrepresent the contents of the order it would be a different matter.

Accepting Torres' version of the facts, that bank officer Waller misrepresented the contents of the state court order, we also do not regard as involving state action. The misrepresentation was by a private individual. Torres had in his hands a copy of the order, and while it had a number of attachments and hence might have made formidable reading, he was not entitled to take the representation of the bank employee as the authoritative word of the state court.

We therefore conclude that the district court was correct in its determination that there was not state action here within the meaning of 42 U.S.C. § 1983, and hence the court properly dismissed the suit.

The judgment is affirmed.