**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 20 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

RICHARD E. NORTON and
CAROLYN A. NORTON,

      Plaintiffs-Appellants,

v.

STEPHEN CURTIS; BOYD MAZER;
CARMEN MAZER,

      Defendants-Appellees,

and

WESTSTAR ESCROW CO.,

      Defendant.

No. 99-2116
(D.C. No. CIV-95-679/DJS/LCS)
(D. N.M.)

---

**ORDER AND JUDGMENT**   *

---

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.

---

    *     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This diversity action arises out of a dispute between the buyers and the sellers of a mobile home park in New Mexico. [1] Plaintiffs Richard and Carolyn Norton purchased the property in November 1993 from defendants Boyd and Carmen Mazer, who were represented in the transaction and subsequent proceedings by attorney Stephen Curtis. Weststar Escrow Co. acted as the escrow agent for the transaction.

Under the terms of the contract, in addition to making payments on the purchase of the property, the Nortons were required to contribute money to two reserve accounts subject to joint control of the Nortons and Mazers. The contract provided that if the Nortons defaulted on any of various provisions in the contract, the Mazers could send them written notice, and if the Nortons failed to cure the default within thirty days, the Mazers could either declare due and payable all amounts remaining to be paid under the contract or terminate the Nortons' rights to the property and retain all sums previously paid as liquidated damages. If the Mazers elected to terminate the Nortons' rights to the property, the contract provided that a recordable affidavit of uncured default delivered to the escrow agent "shall be conclusive proof for the Escrow Agent and any

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

subsequent Purchaser or encumbrancer for value of such uncured default and election of termination." R. Vol. I, Doc. 3, Ex. A at 11. Among the documents held by Weststar was a special warranty deed executed by the Nortons to the Mazers, and the contact provided that "[i]f the Sellers or their agents deliver an Affidavit of Uncured Default and Election of Termination . . . to the Escrow Agent, then the Escrow Agent shall release and deliver the escrow documents to the Sellers. The Escrow Agent shall be entitled to rely on such Affidavit as conclusive proof of termination." *Id.* at 13.

In 1994, Carmen Mazer audited the mobile home park's books to see if the Nortons were making appropriate payments into the two reserve accounts. Based on the results of Carmen's audit, Curtis sent a demand letter to the Nortons stating that they were in default and requesting that they cure the default. The Nortons disputed the results of the audit and attempted to work with the Mazers and Curtis to resolve the dispute. As part of the effort to resolve the dispute, the Nortons worked out an agreement with Curtis, whereby the Mazers would forbear exercising their termination rights under the contract for each week that the Nortons paid $5,000 into Curtis' trust account. On April 27, 1995, Curtis sent the Nortons a letter setting forth what he believed to be the terms of the agreement they had reached. The Nortons did not agree with all the terms in the letter, including that the weekly amounts paid would be forfeited if the default was not

cured. Nonetheless, the Nortons made the weekly payments to stave off litigation with the Mazers. In June 1995, the Nortons learned that Curtis had withdrawn some of the money from the trust account to pay his attorney fees, and that he intended to do so again. They then refused to make any further payments and sent Curtis a letter demanding that he return all their money, which by then totaled $35,000. Curtis did not return the money. Once the Nortons stopped making the weekly payments, the Mazers recorded an affidavit of uncured default, served a copy on Weststar, and demanded that Weststar release the escrow documents to them.

On June 26, 1995, everyone filed suit. Weststar filed an interpleader action in state court naming both the Mazers and the Nortons as defendants. Curtis filed an action in state court on behalf of the Mazers against Weststar. Richard Norton filed the present diversity action in federal court, protesting the Mazers' attempts to declare a default under the contract based on a faulty audit and Curtis' actions with regard to the money paid into his trust account. The next day, Curtis sought a preliminary injunction in the Mazers' state court action requiring Weststar to release the escrow documents to the Mazers. The state court was informed that the Nortons disputed the underlying default and that Weststar had filed an interpleader action, but Curtis argued that the contract provisions regarding release of the escrow documents were mandatory once the Mazers presented

Weststar with the recorded affidavit of uncured default. The state court agreed and ordered Weststar to release the documents to the Mazers. Once Weststar released the escrow documents, it dismissed its interpleader action. The Mazers also dismissed their action against Weststar. Richard Norton made no attempt to seek relief from the state court ruling in state court. Instead, he amended his complaint in the present action to seek additional relief related to the state court proceedings.

Carolyn Norton later joined the present action as a party-plaintiff and in their third amended complaint, the Nortons alleged two federal and eleven state claims against the Mazers and Curtis: 1) illegal seizure of property without due process in violation of 42 U.S.C. § 1983; 2) damage to business reputation through state action in violation of 42 U.S.C. § 1983; 3) breach of contract; 4) breach of fiduciary duty; 5) fraud and fraudulent misrepresentation; 6) negligence and negligent misrepresentation; 7) civil conspiracy; 8) breach of the implied covenant of good faith and fair dealing; 9) prima facie tort; 10) conversion; 11) interference with business relations; 12) defamation; and 13) promissory estoppel. [2] The district court granted summary judgment to Curtis on the two § 1983 claims, concluding there was no showing he acted under color

[2]    The Nortons also alleged claims against Weststar, but none of those claims is at issue on appeal.

of state law. The court also granted Curtis summary judgment on the claims for interference with business relations and defamation. The Nortons stipulated to the dismissal of their claims against the Mazers for interference with business relations and defamation, and the Mazers moved for partial summary judgment on the remaining claims, except those for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. The district court granted the Mazers' partial summary judgment motion ten months later, after the Nortons failed to respond. The case then proceeded to trial against the Mazers on three remaining claims and against Curtis on nine remaining claims. The Nortons lost on all claims at trial.

The Nortons now appeal, raising three issues. First, they contend that the preliminary injunction issued by the state court was void because it was entered in violation of state and federal law. Second, they contend that the Mazers' seizure of the mobile home park through the state court preliminary injunction violated their right to due process. Finally, the Nortons contend that the district court abused its discretion in granting the Mazers' motion for partial summary judgment based on the Nortons' failure to file a response to the motion.

Our resolution of the Nortons' first argument is hindered by the fact that they fail to state where in the record this issue was raised and ruled on, as required by 10th Cir. R. 28.2(C)(2). Our review of the record shows the Nortons

did not seek any declaratory relief in their third amended complaint. The Nortons did raise the validity of the state court injunction in a motion seeking judgment as a matter of law on what the Nortons termed the defendants' affirmative defenses, but they fail to explain how the district court's refusal to declare the state court judgment void affected their claims.

In any event, the district court had no jurisdiction to review the validity of the state court judgment. "The Rooker-Feldman doctrine bars 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Kiowa Indian Tribe v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (alteration in original); *see also Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir. 1986) ("Federal district courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." (quotation omitted)). "Generally, a federal district court cannot review matters actually decided by a state court, nor can it issue any declaratory relief that is inextricably intertwined with the state court judgment." *Kiowa Indian Tribe*, 150 F.3d at 1169 (citation and quotations omitted).

We turn, then to the Nortons' contention that the Mazers' seizure of the mobile home park through the state court proceedings violated the Nortons' right to notice and an opportunity to be heard. Again, the Nortons fail to tell us where this issue was raised and ruled on in the district court. Therefore, we are left once again to guess as best we can what particular ruling of the district court the Nortons are challenging. To the extent the Nortons are attempting to challenge the district court's failure to declare the state court proceedings invalid, the Nortons' challenge fails for the same reasons stated above. To the extent the Nortons are attempting to challenge the district court's disposition of their § 1983 due process claims against the Mazers and Curtis, their challenge fails because they have made no showing of state action necessary to establish a § 1983 claim.

One of the elements a plaintiff must prove to establish a § 1983 claim is that the defendant acted under color of state law. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). Even if we assume that the state court proceedings violated the Nortons' right to due process, "there still must be action 'under color of law' to make [their] claim cognizable under 42 U.S.C. § 1983." *Torres v. First State Bank*, 588 F.2d 1322, 1325 (10th Cir. 1978). In *Torres*, we held that a private party's use of a state court to obtain an ex parte order, even if it violated the § 1983 plaintiff's right to due process, was not sufficient to establish state action. *Id.* at 1325-26. The Nortons made no showing in district

court that either Curtis or the Mazers acted under color of state law, and they make no argument regarding state action on appeal. Therefore, to the extent the Nortons are attempting to challenge the disposition of their § 1983 due process claims, their challenge is without merit.

The Nortons' final challenge is to the district court's disposition of the Mazers' motion for partial summary judgment. The district court granted the motion in accordance with D.N.M. LR-Civ. 7.5(b) which provides that the "[f]ailure to serve (or file, if required by these rules) a response in opposition to any motion constitutes consent to grant the motion." When a district court deems a summary judgment motion confessed due to a party's failure to respond, we review that ruling for an abuse of discretion. *See Miller v. Department of Treasury*, 934 F.2d 1161, 1162 (10th Cir. 1991). In determining whether the district court abused its discretion, we consider three factors: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant." *Id.* "[O]nly when these aggravating factors outweigh[] the judicial system's strong predisposition to resolve cases on their merits" is it appropriate to deem a summary judgment motion confessed for failure to respond. *Id.* (quotation omitted).

The record shows that the Mazers filed their motion for partial summary judgment on May 8, 1997. On June 20, 1997, the Mazers filed a reply,

-9-

suggesting, as the Nortons contend on appeal, that the Nortons prepared a response which they served on the Mazers. The Nortons failed to file any response with the court, however. Pursuant to D.N.M. LR-Civ. 7.4(c) and 7.6(a), the Nortons were required to both file and serve on all parties a response to the Mazers' summary judgment motion within fourteen days of service of the motion.

Trial in the case was set for April 6, 1998. On or about March 16, the court contacted Richard Norton by phone "and informed him that he had failed to file a response and requested that it be filed immediately as the case was set for trial in three weeks." R. Vol. V, Doc. 201 at 1. When the Nortons still had not filed a response a week later, the court entered its order granting the motion pursuant to D.N.M. LR-Civ. 7.5(b). On March 25, 1998, the Nortons and Curtis filed a joint motion to have the April 6 trial date vacated, which the court granted. The trial was eventually rescheduled to begin March 8, 1999.

On March 2, 1999, less than one week before the new trial date, and almost one year after the district court granted the Mazers' motion for partial summary judgment, the Nortons filed a motion under Fed. R. Civ. P. 60(b) seeking to set aside the grant of partial summary judgment. As grounds for their motion, the Nortons contended that they had served a response to the motion on the Mazers and they believed the Mazers' attorney had provided a copy of that response to the court before its March 23 order. The Nortons also contended that they

received no written notification of their failure to file a response and they could not recall any telephonic notice from the court. Finally, the Nortons argued that material issues of fact existed that would preclude a grant of summary judgment on the merits, as evidenced by their own summary judgment motion filed the day before the Mazers' motion. The Nortons filed their response to the partial summary judgment motion in conjunction with their Rule 60(b) motion, but they provided no explanation for their failure to file a response before that time.

The district court denied the Nortons' Rule 60(b) motion. The court concluded that the motion, filed on the eve of trial, was not filed within a reasonable time. Moreover, the court concluded that the Nortons had not shown excusable neglect or any other reason justifying relief from judgment under Rule 60(b). The Nortons do not appeal the district court's denial of their Rule 60(b) motion; they appeal only the initial grant of partial summary judgment. Nonetheless, their statements in the Rule 60(b) motion are relevant to our assessment of the three aggravating factors.

Based upon our assessment of those factors, we conclude the district court did not abuse its discretion in granting the motion for partial summary judgment. First, the Mazers suffered actual prejudice from the Nortons' delay. Although the Mazers filed their motion almost eleven months before trial, the Nortons' delay required the Mazers to wait until two weeks before trial to know whether the

scope of the trial would be limited to only three contract-related claims or would include a host of other non-contract claims. Similarly, the Nortons' failure to respond during the ten months preceding trial interfered with the judicial process, as did their failure to seek any relief from the judgment for almost a year, until the eve of the rescheduled trial. Finally, the Nortons appear to be entirely culpable for the delay. Although they were proceeding pro se, the record shows that Richard Norton was a practicing attorney in New Mexico for many years and the volume of pleadings filed by the Nortons shows that they were well aware of the procedural requirements for responding to motions. Further, the Nortons waited almost a year to seek relief from the judgment and then they offered no explanation for their previous failure to file a response. Under the circumstances, we conclude the district court did not abuse its discretion in granting the Mazers' motion for partial summary judgment.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge