**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JAMAL YANAKI; SUSAN I. MOSS,

     Plaintiffs-Appellants,

v.

IOMED, INC., a publically-held Utah
corporation; ROBERT J. LOLLINI;
MARY CROWTHER; LAURA
MILLAR; PARR, WADDOUPS,
BROWN, GEE & LOVELESS, a Utah
professional corporation; CLARK
WADDOUPS; JONATHAN O.
HAFEN; JUSTIN P. MATKIN;
OFFICE EQUIPMENT ASSOCIATES,
a closely-held Utah corporation, doing
business as OfficeWare; and SCOTT
L. JOHNSON,

    Defendants-Appellees.

No. 04-4061

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:03-CV-345-DB)**

---

David W. Scofield, Peters, Scofield, Price, Salt Lake City, Utah, for Plaintiffs-Appellants.

David M. Bennion (Michael L. Larsen, with him on the brief), Parsons, Behle & Latimer, Salt Lake City, Utah, for Defendants-Appellees.

Before **BRISCOE, HOLLOWAY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

## I.      INTRODUCTION

As part of an action in state court, Iomed, Inc. sought and obtained an *ex parte* order directing local police, with the assistance of Iomed, to execute a search of Jamal Yanaki's residence.  After the search was executed and various items seized, Yanaki and Susan Moss filed a civil rights suit under 42 U.S.C. § 1983 against Iomed, several Iomed employees, lawyers for Iomed, and various other private actors.  Plaintiffs' complaint alleges deprivations of their rights to be free from unreasonable searches and seizures, infringement of their procedural and substantive due process rights, and several state law claims.  The district court granted Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) and Plaintiffs now appeal.  This court exercises jurisdiction pursuant to 28 U.S.C. § 1291.  Because we conclude that Plaintiffs have failed to allege a deprivation of rights committed under color of state law, we **affirm** the district court's dismissal for failure to state a claim.

## II.   BACKGROUND[1]

On April 9, 2002, Iomed, Inc. filed a complaint in Utah state court against Yanaki, a former Iomed employee, alleging a variety of injuries including misappropriation of trade secrets and breach of a confidentiality agreement. The following day, Iomed filed an *ex parte* motion seeking an order permitting immediate discovery to prevent the destruction of evidence (the "Search Order"). On April 12 lawyers for Iomed appeared before a state court judge *ex parte* and argued the motion. The court granted Iomed's motion and issued the Search Order which, in relevant part, directed the Salt Lake County Sheriff's Office, with the assistance of Iomed, to execute the Search Order at Yanaki's home and take into custody all hard drives and other electronic storage media.[2]

---

[1]For purposes of an appeal from a Rule 12(b)(6) dismissal, we accept all well-pleaded factual allegations as true and view them in the light most favorable to the nonmoving party. *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[2]The state court did not specify which laws it was relying on when it issued the Search Order. In its memorandum in support of the *ex parte* motion, Iomed supplied three legal bases for issuance of the order: (1) the Utah Uniform Trade Secrets Act, codified as Utah Code Ann. §§ 13-24-1 to -9, which Iomed asserted provides Utah courts with authority to protect trade secrets by any reasonable means; (2) Rule 34 of the Utah Rules of Civil Procedure, which states, in relevant part, that a party may serve a request on another party "to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, surveying, photographing, testing, or sampling the property or any designated object or operation thereon, within the scope of Rule 26(b)," Utah R. Civ. P. 34(a); and (3) the general authority of the court to compel compliance with its orders and to "control its process and orders to conform to law and justice," Utah

On the morning of April 15 Justin Matkin, a lawyer for Iomed, arrived at Yanaki's home accompanied by Salt Lake County Deputy Sheriff Heinz Kopp. Moss answered the door and was served with the Search Order. Moss refused to allow Matkin and Kopp into the home because Yanaki was not present at the time. Kopp remained outside the home while Matkin returned to the state court judge to secure an *ex parte* writ of assistance. The judge issued a Supplemental Order in Aid of Enforcement (the "Enforcement Order") which directed and authorized the Salt Lake County Sheriff's Office to enter Yanaki's residence and to use reasonable force, if necessary and appropriate, to execute the Search Order.

Matkin returned to Yanaki's home with the Enforcement Order, and Matkin and Kopp, along with Mary Crowther and Scott Johnson, entered Yanaki's home and commenced the search. Shortly thereafter a second police officer, Sergeant Kendra Herlin, arrived to assist. Pursuant to the Search Order, officers seized Moss and Yanaki's computer and other materials belonging to them, including Yanaki's University of Utah Executive MBA Program materials, various other papers and effects Yanaki had packed upon leaving Iomed, and a CD-ROM beloning to Ceramatec, Inc., a client of Yanaki's consulting business.

On April 14, 2003, Yanaki and Moss filed separate complaints in United States District Court for the District of Utah seeking relief under 42 U.S.C.

Code Ann. § 78-7-5.

§ 1983.[3]  In their complaints, which were subsequently consolidated, Plaintiffs alleged that the search of their residence violated their Fourth Amendment rights to be free from unreasonable searches and seizures and their procedural and substantive due process rights under the Fifth and Fourteenth Amendments.[4]

The district court granted Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The court concluded that Plaintiffs' pleadings did not support the element of state action required to bring a claim under § 1983.  The court then declined to exercise supplemental jurisdiction over Plaintiffs' remaining state claims.  Yanaki and Moss filed a timely notice of appeal challenging the district court's order granting Defendants' motion to dismiss.

## III.  STANDARD OF REVIEW

This court reviews a Rule 12(b)(6) dismissal *de novo*, accepting all well-pleaded facts as true and in the light most favorable to the nonmoving party.

---

[3]Yanaki and Moss named the following as defendants: Iomed, Inc.; Robert Lollini (Chief Operating Officer of Iomed); Mary Crowther (Iomed employee); Laura Millar (executive assistant at Iomed); Parr, Waddoups, Brown, Gee & Loveless (Iomed's law firm); Clark Waddoups, Jonathan Hafen, and Justin Matkin (attorneys); Office Equipment Associates; Scott Johnson (owner and controller of Office Equipment Associates); and John Does I through XX (members of Iomed's Board of Directors and other unknown conspirators) [hereinafter and collectively, "Defendants" unless otherwise specified].  It is not disputed that all of the Defendants are private persons or actors.

[4]Although the issue was not addressed by the district court, Plaintiffs do not have a viable Fifth Amendment claim because the Fifth Amendment only applies to federal action.  *See Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997).

*Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

## IV.  DISCUSSION

To state a claim under § 1983,[5] Plaintiffs must allege that they were deprived of a right "secured by the Constitution and laws" of the United States and that this deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  On appeal Plaintiffs contend that the district court erred when it concluded that the complaint failed to satisfy the color of state law requirement of § 1983.  Plaintiffs argue that the involvement of the police in searching Moss and Yanaki's home and seizing their property

---

[5]Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

-6-

pursuant to the Search and Enforcement Orders suffices to establish conduct committed under color of law.

To be under color of law, the deprivation of a federal right "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).[6] Applying this analytical framework in *Lugar*, the Court determined that the plaintiff's allegation that private conduct unlawful under state law deprived the plaintiff of his property without due process failed to state a claim under § 1983. *Id.* at 940.[7] The Court reasoned that the conduct "could not

---

[6]In determining whether the plaintiff's claims satisfied the under color of law element of § 1983, the Supreme Court noted that the two parts of the test converge when the claim is "directed against a party whose official character is such as to lend the weight of the State to his decisions." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[7]*Lugar* involved a debtor who had sued his creditor under § 1983, alleging that the creditor's prejudgment attachment of the debtor's property deprived the debtor of his property rights without due process of law. *Id*. at 924-25. Two counts of the plaintiff's complaint alleged violations of the Due Process Clause. *Id.* at 940. In Count One plaintiff challenged the state statutory scheme, under which defendant had obtained prejudgment attachment of plaintiff's property, as defective under the Fourteenth Amendment. *Id.* at 940-41. In Count Two

(continued...)

be ascribed to any governmental decision; rather [defendants] were acting contrary to the relevant policy articulated by the State." *Id.* The Court concluded that invocation of a state "statute without the grounds to do so could in no way be attributed to a state rule or a state decision." *Id.*

Similarly, this court has held that a private litigant's use of state court proceedings to obtain an *ex parte* temporary restraining order does not satisfy the color of law requirement of § 1983. *Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1325-27 (10th Cir. 1978). Consistent with the principles announced in *Lugar*, this court discussed the issue as follows:

> Is there state action simply because in litigation in a state court that court exercised its authority to issue an order which we assume to be wrong and which did not give the debtor his rights to procedural due process? In answering the question it is important to consider what this case is not. It is not a situation where an unconstitutional statute, regulation or custom is being enforced by the state courts. Nor is this a case where a private contract furthering discrimination or other unconstitutional conduct is being enforced by the courts. This does not involve a state officer using his authority, or the appearance thereof, outside the scope of his statutory duties.
>
> This is a case where private parties only were involved in state court litigation and it is alleged that the order granted by the court is not only erroneous but infringes one party's rights to procedural due process. . . .
>
> *We do not think that the "color of law" reference in § 1983 was intended to encompass a case such as this one, where the only infirmities are the excesses of the court order itself, subject to*

---

[7](...continued) plaintiff alleged a deprivation of property that resulted from defendant's "unlawful" conduct, by which plaintiff apparently meant unlawful under state law. *Id.* at 940.

*immediate modification by a court having jurisdiction over the parties, and subject to the normal processes of appeal.*

*Id.* (emphasis added) (citations omitted); *see also Lindley v. Amoco Prod. Co.*, 639 F.2d 671, 672-73 (10th Cir. 1981) (holding that a discovery order was not state action).

Yanaki and Moss do not challenge the constitutionality of the state laws under which the Search and Enforcement Orders were issued. Indeed, Plaintiffs assert that issuance of the Orders was unlawful under state law.[8] Without a challenge to the constitutionality of the state laws underlying the Search Order and accompanying Enforcement Order, the conduct of which Plaintiffs complain cannot be attributed to a decision of the state because "[Defendants] were acting contrary to the relevant policy articulated by the State." *Lugar*, 457 U.S. at 940.[9]

---

[8]At oral argument Plaintiffs admitted that there is no allegation in the complaint that the state laws upon which the Search and Enforcement Orders were based are facially unconstitutional. Plaintiffs had said as much in their complaint and in their briefs. *See* Complaint ¶ 182 (arguing that defendants avoided use of the constitutional Utah state laws and "misused the laws upon which they relied"); Aplt. Br. at 10 (recognizing that "long-established Utah law held that any state law purporting to authorize the procurement of civil search warrants by private parties in civil litigation is illegal as in violation of the Utah Constitution"); *id.* at 14 n.5 ("The orders clearly do not constitute valid search warrants under Utah law."); *id.* at 16 n.6 (citing *Allen v. Trueman*, 110 P.2d 355, 361 (Utah 1941), for the proposition that the Search Order was invalid under Utah law); Aplt. Reply Br. at 6 (arguing that Plaintiffs' claim is strengthened by the suggestion that "there was no legal basis for such an order").

[9]*See also Cobb v. Saturn Land Co.*, 966 F.2d 1334, 1335 (10th Cir. 1992) (noting that "action allegedly taken in violation, rather than under color, of state

(continued...)

-9-

"To hold otherwise would open the door wide to every aggrieved litigant in a state court proceeding[], and set the federal courts up as an arbiter of the correctness of every state decision." *Bottone v. Lindsley*, 170 F.2d 705, 707 (10th Cir. 1948). Because Plaintiffs allege nothing more than "private misuse" of state laws, their complaint fails to satisfy the first part of the color of law test as announced in *Lugar*. *See Lugar*, 457 U.S. at 941.

Plaintiffs, however, argue that the involvement of the police in the search of Moss and Yanaki's residence makes this case factually distinguishable from the Supreme Court's decision in *Lugar*. Yanaki and Moss do not allege that Defendants conspired with the state court judge or with the police to obtain the Search Order or the Enforcement Order. *See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). Plaintiffs allege only that Defendants' search of the residence was conducted in concert

---

[9](...continued)
law, [] can serve as a basis only for Plaintiff's" state law claim); *Roudybush v. Zabel*, 813 F.2d 173, 177 (8th Cir. 1987) ("State policy is not implicated when an injured party claims that a private party has violated a constitutional post-judgment procedural statute in the course of depriving the injured party of his property. To the contrary, the state, by enacting the statute, has expressly condemned a deprivation by such means."); *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983) ("To the extent that plaintiff alleges that state law did not authorize defendant to obtain [plaintiff's medical] records, 'the conduct of which [plaintiff] complained could not be ascribed to any governmental decision.'" (quoting *Lugar*, 457 U.S. at 940)); *Gilmore v. Salt Lake Cmty. Action Program*, 710 F.2d 632, 638 (10th Cir. 1983) (concluding that because the "alleged deprivations [did not] result[] from a governmental rule, policy, or decision," the conduct of the defendant, a state actor, was not state action).

with the police who were acting pursuant to the orders of the state court, which

Plaintiffs admit were unlawful under state law. The involvement of the police in

executing the court-ordered search, without more, does not convert Defendants'

abuse of state law into conduct attributable to the state for purposes of § 1983

liability. *See Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (6th Cir.

1984); *Taylor v. Gilmartin*, 686 F.2d 1346, 1348-49, 1355 n.3 (10th Cir. 1982);

*Torres*, 588 F.2d at 1327.[10] Without a challenge to the constitutionality of the

underlying state laws or any suggestion of a conspiracy between Defendants and

the police, the actions of the police in discharging their official duties do not

distinguish Plaintiffs' claims from the claim rejected in *Lugar*. *See Lugar*, 457

U.S. at 924 (noting that the writ of attachment was executed by the County

Sheriff).[11] Thus, Plaintiffs fail to satisfy the first part of the color of law test

---

[10]Plaintiffs' reliance on *Gallagher v. "Neil Young Freedom Concert*," 49 F.3d 1442 (10th Cir. 1995), is misplaced. There was no suggestion in *Gallagher* that the allegedly unconstitutional pat-down searches at issue were conducted pursuant to a state court order that itself was unlawful under state law. *See id.* at 1445-46.

[11]The dissent focuses on the second part of the color of law test in *Lugar* and ignores the fact that Plaintiffs cannot satisfy the first part of the test because Defendants' conduct is not attributable to the state. *See Lugar*, 457 U.S. at 937, 940-41. The dissent contends that the facts of the present case are analogous to those of *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), in which the Ninth Circuit found the color of law requirements to be satisfied. In *Howerton*, however, the plaintiffs used the police to "put the weight of the state behind their private decision to evict," causing the case to fall within the "abuse of authority" doctrine of *Monroe v. Pape*, 365 U.S. 167 (1961), and thus making it expressly

(continued...)

because the conduct that Plaintiffs complain deprived them of their constitutional rights was caused by and can only be attributed to the private Defendants. It is therefore unnecessary to address whether the private Defendants "may fairly be said to be [] state actor[s]." *Id.* at 937.

## V. CONCLUSION

Because there is no set of facts under which Plaintiffs can establish that the alleged deprivation of rights was committed under color of state law, we conclude that Plaintiffs have failed to state a claim under 42 U.S.C. § 1983.[12] This court therefore **AFFIRMS** the district court's order dismissing Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6).

---

[11](...continued) distinguishable from *Lugar*. *Howerton*, 708 F.2d at 384 & n.9 (noting that "[p]olice were on the scene at each step of the eviction" and "actively intervened" at the request of the private defendants and on the initiative of one of the officers). Here, the police involvement was caused solely by the issuance of the state court order and not by the private Defendants seeking out the police officers in aid of their private agenda. There is no suggestion by the dissent that Plaintiffs alleged a conspiracy between the police and the private Defendants, only that the police "facilitated the allegedly illegal search and seizure." In this case, the conduct of the police does not fall under the abuse of authority doctrine of *Monroe* because the police, in executing the court order, were merely discharging their statutory duties. *See Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1326 (10th Cir. 1978).

[12]Our disposition of Plaintiffs' appeal makes it unnecessary to address the alternative grounds for affirmance offered by Defendants.

No. 04-4061, *Yanaki and Moss v. Iomed, Inc., et al.*

**HOLLOWAY,** Circuit Judge, dissenting.

I am convinced that the Plaintiffs Yanaki and Moss have sufficiently alleged state action with respect to Count I of their § 1983 claim. Therefore we must reverse the district court's grant of dismissal of Plaintiffs' § 1983 case under Fed. R. Civ. P. 12(b)(6). For the reasons discussed below, I thus respectfully dissent.

The Majority Opinion bases its affirmance of the dismissal on the following conclusions:

> Without a challenge to the constitutionality of the underlying state laws *or any suggestion of a conspiracy* between Defendants and the police, the actions of the police in discharging their official duties do not distinguish Plaintiff's claims from the claim rejected in [*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)].
> Thus, Plaintiffs' fail to satisfy the first part of the color of law test because the conduct that Plaintiffs' complain deprived them of their constitutional rights was caused by and can only be attributed to private defendants.

Maj. Op. at 11-12. (emphasis added). I can accept the Majority's conclusion that Plaintiffs have not challenged the constitutionality of the state laws upon which the magistrate relied in issuing the Search Order or the Supplemental Order in Aid of Enforcement.[1] Thus, even without a challenge to the constitutionality of state

---

[1] I do not find that a clear concession was made that the Plaintiffs are not challenging the constitutionality of the Utah laws involved. For example *see* Aplt. Op. Br. at 19 ("The state laws that served as the basis of the state judge's search and seizure orders, whatever those laws are, violate the Fourth

(continued...)

laws, I disagree with the Majority's conclusion that Plaintiffs failed to sufficiently allege concerted action between the private Defendants and the police in order to support a finding that the Defendants were acting "under color of state law."

Because we are called on here to review the district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we must accept all well-pleaded factual allegations as true, and view them in the light most favorable to the non-moving party. *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

We are instructed firmly that a 12(b)(6) motion should not be granted "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46. Our function on a R. 12(b)(6) motion is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief

---

[1](...continued)
Amendment's prohibition against unreasonable searches and seizures."). However, for purposes of my analysis, I need not decide whether such a concession was made. This is because, as I explain below, in any event I am persuaded that there are sufficient allegations in the Plaintiffs' complaints of concerted or conspiratorial conduct by Defendants with the state officers so that we cannot say that the Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Rather, those allegations detailed below clearly support an inference of concerted action between Defendants (including Iomed's lawyers) and Deputy Sheriffs.

-2-

may be granted." *Sutton*, 173 F. 3d at 1236; *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

The Supreme Court in *Lugar* identified a two part test for determining whether conduct allegedly causing the deprivation of a federal right may be fairly attributed to the state for the purposes of a § 1983 claim:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. at 937. In the instant case, Plaintiffs allege three counts by which they claim a deprivation of their rights "under color of state law" in violation of § 1983. App. at 36-42 (Yanaki); 153-58 (Moss). The first count deals with the search of Yanaki's home itself, and seizure of materials within it, conducted by Defendants in concert with Salt Lake County officers. App. at 36-38; 153-55. Plaintiffs argue that this search was unreasonable, based on an unlawful private warrant and without probable cause. *Id*. The second and third counts address Defendants' actions in obtaining the ex parte Search Order and Supplemental Order, which Defendants claimed authorized their search. App. at 38-42; 155-58. Accepting the Majority's conclusion that the Plaintiffs fail to challenge the constitutionality of any state laws under which the Orders were

-3-

issued, the second and third counts would therefore amount to allegations of no more than "private misuse of a state statute," which does not meet the first prong of the *Lugar* test. *See Lugar* at 941.

However, Count I of Plaintiffs' § 1983 complaint, which asserts multiple allegations about conduct during the ***execution*** of the search order, does meet both prongs of the *Lugar* test and does sufficiently allege action "under color of state law" within the meaning of § 1983 so as to survive a motion to dismiss. The first prong of the *Lugar* test - that the deprivation of a right is attributable to the state - is satisfied when "the authority of state officials. . . put the weight of the State behind Defendant's private decision[.]" *Lugar* at 940. The Court in *Lugar* further instructs that the second prong, identification of a defendant as a state actor, may arise "because he is a state official, *because he has acted together with or has obtained significant aid from state officials*, or because his conduct is otherwise chargeable to the state." *Id*. at 937 (emphasis added).

In *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453-56 (10th Cir. 1995), we surveyed several instances in which courts have found action "under color of state law" where governmental and private parties have acted together (the so-called "joint action" test). We noted that "[j]ust as with the other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient." *Id*. at 1453. One way of inferring a joint action claim is where "both public and private actors share a common, unconstitutional

-4-

goal." *Id*. at 1454. An alternative approach is "focused on the manner in which the alleged constitutional deprivation is effected." *Id*. The precedents hold that, "if there is a 'substantial degree of cooperative action' between state and private officials, or if there is 'overt and significant state participation' in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." *Id*. (internal citations omitted). Typically, the joint action test can be satisfied where police are involved in cooperative action with a private party when "the police have substantially assisted in the allegedly wrongful conduct." *Id*. at 1455.

An unreasonable search or seizure is clearly "wrongful" when conducted by a state official. Such a search or seizure violates the Fourth, Fifth and/or Fourteenth Amendments and may be the subject of a suit under § 1983. *See e.g. Burdeau v. McDowell*, 256 U.S. 465, 475 (1921) ("The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action."); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[The Due Process] Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures.") In the instant case, assuming that the search of Yanaki's and Moss's home on behalf of private party

Defendants was unreasonable,[2] the search becomes a constitutional violation if police lend the imprimatur of the state to it by "substantially assisting" the private defendants in carrying it out, and the private defendants in turn become "state actors" if they exercise a "substantial degree of cooperative action" with police or if they "share a common, unconstitutional goal."

There are numerous allegations in the complaint which should fairly be read to demonstrate both significant assertion of authority by Deputy Sheriffs, which put the weight of the State behind the search of Plaintiffs' home, and substantial cooperative action between Defendants and the officers in conducting the search, which establish Defendants as state actors. The Complaint alleges that at approximately 8:00 a.m. on Monday morning, April 15, 2002, Defendant attorney Matkin *and Sheriff's Deputy Kopp* rang the doorbell of Yanaki's home three separate times, awakening Plaintiff Moss. App. at 7. After she refused them entry, Mr. Matkin, an Iomed attorney, said: "We can come in now, or we can come in later. *Id*. at 8. Deputy Sheriff Kopp, *"to support Matkin's statement and to intimidate Moss, said: 'we can kick in this door.'" Id*. (emphasis added). After

---

[2] While Defendants maintain that the search and seizure executed were reasonable, see Aplee Br. at 23-25, the Supreme Court has recognized that a determination of reasonableness implicated factual elements. *See e.g. O'Connor v. Ortega*, 480 U.S. 709, 729 (reversing and remanding summary judgment for determination of factual elements necessary to determine reasonableness.). Given the myriad factual allegations of unreasonableness in the instant Complaint, it would be inappropriate for us to make a determination of reasonableness at this stage.

leaving to obtain a writ of assistance from the state magistrate, the Majority Opinion notes that Defendant Matkin returned to Yanaki's home and that Matkin *and Officer Kopp* and others entered Yanaki's home and commenced the search. Maj. Op. at 4. "Shortly thereafter *a second police officer, Sergeant Kendra Herlin, arrived to assist.*" *Id*. (emphasis added). The Majority Opinion also states that the "*officers* seized Moss and Yanaki's computer and other material belonging to them." *Id*. (Emphasis added).

The above allegations are analogous to those considered by the Ninth Circuit in *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), a case which we cited approvingly in *Gallagher*. *Howerton* dealt with a landlord's private eviction of his tenants, executed with significant involvement and assistance from local police. There was no allegation of unconstitutionality regarding any underlying state law which would have allowed the eviction. Indeed, the tenants contended

that the eviction in *Howerton* was illegal under state law.  *See id.* at 381.[3]  The

court noted:

> This case involves more than a single incident of police consent to
> "stand by" in case of trouble.  Police were on the scene at each step of
> the eviction.  Mr. Gabica testified that the police presence gave him the
> feeling he had the right to cut off the utilities.   Moreover, the police
> officer actively intervened--he privately approached the Howertons and
> recommended that they leave the trailerhouse.

*Id*. at 384.  The court further reasoned as follows:

> The Supreme Court in a 1983 action has affirmed a judgment against a
> private party where state agents seized the plaintiff's property, the
> agents acting pursuant to statute upon the private party's ex parte
> application.  *E.g., Fuentes v. Shevin*, 407 U.S. 67 (1972).  *See also*
> *Lugar*[,] [457 U.S. at 934].   On the other hand, a private repossession
> pursuant to a state statutory provision is not state action.  *Flagg*
> *Brothers, Inc. v. Brooks*, 436 U.S. 149, 164-66 (1978).  In this case, the
> Howertons claim the Gabicas chose a middle road, using the police to
> facilitate an illegal repossession.  If true, we think this constituted state
> action.

---

[3]  This is comparable to the instant case where Yanaki argues that the
Search Order and Supplemental Order in Aid of Enforcement were also contrary
to state law.  It might be  argued that the actions of state officers in executing an
illegal eviction or an illegal court order cannot be attributable to the state because
the eviction or court order is contrary to state policy.  In these cases, however, the
officers **are** the state.  The fact that officers may have been acting contrary to
relevant state policy could shield their employer from liability under *Monell v.*
*Department of Social Services*, 436 U.S. 658, 688-94 (1978) (holding that
municipalities were "persons" liable under §1983 for constitutional violations that
resulted from official policy or informal "custom," but not on a respondeat
superior basis for injuries caused solely by individual employees' actions).  But
that circumstance would not shield any private parties who directly and closely
acted in concert with the officers in their unconstitutional conduct.

*Id.* The Ninth Circuit therefore reversed the district court's dismissal, holding that the facts as alleged were sufficient to support the conclusion that the landlord had acted "under color of state law."

As in *Howerton*, state officers in this case were on the scene throughout Defendant's search of Yanaki's and Moss's home and seizure of their property. They clearly facilitated the allegedly illegal search and seizure at Yanaki's and Moss's home in the same manner that the police facilitated the allegedly illegal repossession in *Howerton.* I therefore believe, as in *Howerton*, that the district court's dismissal of Yanaki's and Moss's Count I must be reversed.[4]

---

[4]The Majority Opinion in its footnote 11 attempts to escape the force of *Howerton v. Gabrica,* 708 F.2d 380 (9th Cir. 1983), by arguing that *Howerton* is distinguishable because the Plaintiffs there used the police to put the weight of the state behind their private decision to evict. The allegations here cannot be so parsed against the non-moving parties. They must be read instead under the Supreme Court's teaching in *Conley v. Gibson*, 355 U.S. at 45-46, to see whether some set of facts might be shown to entitle the non-moving parties to relief. And under *Lugar*, 457 U.S. at 941, private parties' (like Iomed's lawyers') "joint participation with state officials" (like Kopp and Herlin) was sufficient to characterize the private parties as state actors for purposes of the Fourteenth Amendment.

The complaints of Yanaki and Moss must be read most favorably to those Plaintiffs to determine whether they averred circumstances under which a showing could be made that the Defendants "put the weight of the State behind their private decision . . ." *Lugar* at 940. We must note that in Yanaki 's complaint he alleges:

> On April 15, 2002, Matkin, Crowther and Johnson [Defendants-Appellees] conducted an illegal search of Yanaki's home, jointly, under color of state law, with the Salt Lake County Sheriff's Office, and the search was a state action conducted pursuant to orders from a state

(continued...)

-9-

Accordingly, I respectfully dissent.

---

[4](...continued)
court judge . . . on April 15, 2002, Matkin, Crowther and Johnson illegally seized property that belonged to Yanaki from his home jointly under color of state law, with the Salt Lake State Sheriff's Office and the seizure was a state action, conducted pursuant to orders from a state court judge . . . the search and seizure was unreasonable under the circumstances . . .

App. 136-137. Parallel allegations are made in the complaint of Moss. See App. at 153-154.

To me, these allegations are clearly adequate to permit a showing that the Sheriff's Deputies participated in conducting the search and removing property of Yanaki and Moss, and they demonstrate putting the weight of the state behind the search and seizure.