**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STEVE BASTIBLE, JOHN BRYAN,
DOUGLAS ROWAN, DONALD
PAYNE, LARRY MULLENS, and
SCOTT DARDEN,

        Plaintiffs - Appellants,

    v.

WEYERHAEUSER COMPANY,

        Defendant - Appellee.

No. 05-7037

---

JIMMIE WYATT,

        Plaintiff - Appellant,

    v.

WEYERHAEUSER COMPANY,

        Defendant - Appellee.

No. 05-7038

---

RYAN LEWIS,

        Plaintiff - Appellant,

    v.

WEYERHAEUSER COMPANY,

        Defendant - Appellee.

No. 05-7039

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NOS. 02-CV-630-W, 02-CV-627-W, and 02-CV-670-W)**

---

Lawrence A. G. Johnson (Belva Barber with him on the briefs), Tulsa, Oklahoma, for Plaintiffs - Appellants.

William S. Leach, Eldridge Cooper Steichen & Leach, Tulsa, Oklahoma, and J. Patrick Cremin (Marshall J. Wells with him on the brief), Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, Oklahoma, for Defendant - Appellee.

Robert Dowlut, Fairfax, Virginia, filed an Amicus Curiae brief for the National Rifle Association of America.

---

Before **LUCERO** , **ANDERSON** , and **TYMKOVICH** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

---

Plaintiffs in these consolidated appeals are either former employees of defendant Weyerhaeuser Company ("Weyco") or former employees of contractors that supplied personnel for Weyco at its paper mill facility in Valliant, Oklahoma. Plaintiffs were terminated after a search by Weyco security personnel uncovered firearms in their vehicles parked in the employee parking lot at the mill, in violation of Weyco policies. They brought three separate actions in state court, which were subsequently removed to the federal district court on diversity

grounds, alleging that their termination violated Oklahoma constitutional and statutory authority establishing their right to carry firearms, that the search violated their Fourth Amendment rights, and further asserting state law causes of action for false imprisonment, intentional and tortious interference with business relations, invasion of privacy and negligence. The district court granted summary judgment to Weyco in each action. We affirm.

## BACKGROUND

Weyco operates its mill on land leased under a long-term lease from the Southeastern Oklahoma Industries Authority. For certain services at the mill, Weyco contracts with third parties. The largest such contractor, Kellogg, Brown & Root ("KBR"), provides maintenance services at the mill. Plaintiffs Steve Bastible, John Bryan, Douglas Rowan, Donald Payne, Larry Mullens and Scott Darden are former at-will employees of KBR. Plaintiff Ryan Lewis is a former at-will employee of a different contractor, Kenny Industrials, which supplied personnel for the mill. Plaintiff Jimmie Wyatt is a former at-will employee of Weyco.

KBR, Kenny Industrials and Weyco all maintained policies concerning the possession of firearms by their employees. All prohibited the possession of

firearms by employees, including in parking lots used by employees.[1]  KBR and

Kenny Industrials employees working at the Weyco mill were required to comply

with Weyco policies as well as the policies of their own employers.  KBR also

maintains various bulletin boards throughout the Weyco mill and has posted

specific "no weapons" literature on those bulletin boards.  Further, "[a]ll KBR

employees working at the Valliant Mill have completed a computer safety module

which states that no weapons are permitted on the Mill site."  Lee Aff. ¶ 6, id. at

68.

From November 18, 1996, to November 18, 2001, certain Weyco collective

bargaining unit employees were exempt from the general corporate "no weapons"

---

[1]KBR's policy "prohibits bringing onto Company property, including Company-owned or leased parking areas, any firearms, whether properly licensed or not."  Appellants' App. at 70.  It also "prohibits an employee from taking onto Customer property, including Customer-owned or leased parking areas, [firearms.]"  Id. at 70-71.

Weyco's company policy provides the following:  "the possession or carrying of firearms or other weapons, explicitly or concealed, by anyone within the work environment . . ., including vehicles on company property, is STRICTLY PROHIBITED."  Id. at 62.  "Work environment" explicitly encompasses "adjacent parking areas."  Id. at 63.  Weyco's "contractor safety requirements" for the mill provide that "possession of firearms . . . by any contractor employee subjects the contractor to potential termination of [the] contract and immediate removal from the site."  Id. at 72-73.  They further state that "[n]o firearms are allowed on the mill site including parking lots."  Id. at 73.

No party directs us to any place in the record where there is a copy of Kenny Industrials' policy on firearms.  However, no one disputes the fact that Kenny Industrials employees who work at the mill, like KBR employees who work there, must comply with Weyco's policies, set out above.

policy because of a provision in the applicable collective bargaining agreement ("CBA"). [2] That exemption from the general "no weapons" policy was removed as of November 18, 2001, and, in any event, only applied to certain Weyco employees. None of the plaintiffs were subject to the CBA. Following the passage of the new CBA in late 2001 or early 2002, a sign was posted at the mill entrance advising anyone entering the facility that weapons were prohibited.

In 2002, Weyco management became concerned about possible substance abuse at the mill. Weyco accordingly decided to arrange for a search of certain areas of the mill facility to ensure compliance with Weyco's polices banning substance abuse. Weyco personnel contacted Mike Willeby, the Sheriff of McCurtain County, Oklahoma, about Weyco's plan to conduct a search with dogs of the employee parking lot. Willeby stated that a Weyco security employee, Gene Mertz, asked Sheriff Willeby to "give [Weyco] the tag number and . . . tell who owned [any] vehicle" in the parking lot to which a dog alerted. Willeby Dep. at 11, id. at 309. Willeby indicated that he understood that Weyco would only be using the dogs to look for drugs.

---

[2]The CBA provided that causes for discharge upon the first offense included "[b]eing on the Company mill site including the parking lot, with any firearms." Appellants' App. at 67. However, it further provided that "[f]irearms for recreational purposes may be brought onto the parking lot, in employee's vehicles, for use after working hours, provided such arms remain locked in the vehicle." Id.

The search took place on October 1, 2002. Weyco security brought dogs and ran them past cars parked in the mill parking lot where mill and contractor employees parked their vehicles while they worked. The parking lot was also available for use by the public. [3] If a dog alerted to a vehicle, Weyco security personnel contacted the McCurtain County Sheriff's office dispatcher, who then told the security personnel the name of the vehicle's registered owner. Each plaintiff stated that he was asked to come to the parking lot after a dog had signaled the presence of some kind of contraband in his vehicle. When told that the dog alerted to, *inter alia*, firearms and/or drugs, all but two informed the security personnel that he had a firearm or firearms in the vehicle and ultimately gave permission for a search of the vehicle. [4]

---

[3]Apparently there are a golf driving range, park pavilions, walking paths, and a free public car wash adjacent to, or at least very close by, the fenced mill facility. Members of the public using those amenities park in the parking lot where mill workers park.

[4]When told that the dog alerted to "[f]irearms, shells and drugs" plaintiff Bastible said he had a gun in his truck and gave permission to search it. Bastible Dep., Appellants' App. at 91. When told that the dog alerted to "drugs, alcohol or firearms," plaintiff Bryan said he had a pistol in his car. Bryan Dep., id. at 110. Bryan stated that he was told he would be terminated if he did not give consent to search his car. When told the dog which had alerted to his vehicle could detect "guns, drugs, explosives and . . . alcohol," plaintiff Rowan said he had guns in his vehicle and gave consent to search. Rowan Dep., id. at 123-24. Plaintiff Darden said he was summoned to the parking lot, admitted he had a gun in his vehicle, and unlocked his car. Darden Dep., id. at 138-41. Plaintiff Payne stated that, when asked if his vehicle contained "guns, . . . alcohol, drug paraphernalia and stuff like that," he volunteered that he had a pistol in his car and gave consent to

(continued...)

Sheriff Willeby was not in his office when the search was actually conducted on October 1. When he returned to his office the next day, he looked over the list of tag numbers for which his dispatcher had provided ownership information during the search the previous day. Based on his experience, he knew that a dog searching for drugs only would not have alerted on that many vehicles. He accordingly contacted Mertz and asked if the dogs had been used to search for contraband other than drugs. Mertz confirmed what Willeby had heard "through the grapevine"—that the dogs were used to search for guns. Willeby Dep. at 14, id. at 312.

When Mertz contacted Sheriff Willeby about conducting another search on November 14, 2002, Willeby agreed to help but insisted on parameters. Accordingly, he provided two forms to be used by sheriff's department officers on the scene. One was a permission to search form and the second was a form for the dog handlers attesting that the dogs being used were state-certified narcotics detection dogs.

---

[4](...continued)
search. Payne Dep., id. at 154-55. Plaintiff Mullens stated that he was told that he would be terminated if he did not give consent to search his vehicle, so he unlocked his truck and security personnel found his pistol. Mullens Dep., id. at 164-66. Plaintiff Wyatt stated that, when told about the search of vehicles in the parking lot, he volunteered that he had a gun in his pickup and gave consent to search it. Wyatt Dep., id. at 1881. Plaintiff Lewis had apparently driven his father's car to work the day of the search. He stated he was not aware that his father's pistol was in the car at the time of the search. Lewis Dep., id. at 1915.

When sheriff's department officers arrived at the scene of the search on November 14, the officers relayed to Willeby that the dogs had already "flagged . . . an unusually large number of vehicles." Willeby Dep. at 17-18, id. at 314-15. When the officers asked the dog handlers which vehicles the dogs had indicated contained narcotics, the handlers were unable to say. Willeby then withdrew his officers and participated no further in the search.

All Weyco employees found with contraband in their vehicles, including plaintiff Wyatt, were terminated. Weyco management told the supervisors for the various contractors with personnel at the mill, including KBR and Kenny Industrials, "that any contract personnel found with contraband would not be allowed to return to the Valliant Mill." Nebel Aff. ¶ 9, id. at 60. KBR ultimately determined to terminate plaintiffs Bastible, Bryan, Rowan, Darden, Payne, and Mullens. Kenny Industrials terminated plaintiff Lewis.

Plaintiffs first filed this action in Oklahoma state court. [5] The case was removed to federal district court on the basis of diversity jurisdiction.

---

[5] As indicated previously, plaintiffs actually filed three separate actions. Plaintiffs Bastible, Bryan, Rowan, Payne, Mullens and Darden constituted one group of plaintiffs; plaintiffs Wyatt and Lewis each filed an action. All asserted essentially identical claims, and resulted in three separate, but substantially identical, orders granting summary judgment to Weyco. The three cases were consolidated on appeal.

The district court granted summary judgment to Weyco on all of plaintiffs' claims. It held that "the regulation of firearm possession contained in § 1290.22 of the Oklahoma Self-Defense Act passes constitutional muster," Order at 23, id. at 627; that there is no cause of action for wrongful discharge of an at-will employee exercising his constitutional right to bear arms; that plaintiffs' § 1983 claim fails because Weyco was not acting under color of state law when it searched plaintiffs' vehicles; that plaintiffs failed to establish that Weyco intentionally and/or tortiously interfered with plaintiffs' business relations; that plaintiffs failed to show that Weyco acted negligently; that plaintiffs' claims for false imprisonment fail as a matter of law; and that plaintiffs failed to demonstrate that Weyco's conduct satisfied the standard for invasion of privacy.

**DISCUSSION**

"We review the grant of summary judgment de novo and affirm only if the record, considered in the light most favorable to the plaintiff, establishes no genuine issue of material fact." Jones v. Denver Pub. Schs., 427 F.3d 1315, 1318 (10th Cir. 2005) (citations omitted); see Faustin v. City & County of Denver, 423 F.3d 1192, 1195 (10th Cir. 2005).

On appeal, plaintiffs argue: (1) Okla. Stat. Ann. tit. 21, § 1290.22 (2002) (amended 2004), which authorized Weyco's firearms policy, is unconstitutional as

applied to them and a 2004 amendment thereto, id. § 1290.22(B) (Supp. 2006),

retroactively applies to them and protects their right to have firearms in their

vehicles; (2) the district court erred in "determining a private property owner-

employer may impose restrictions upon the lawful keeping and transportation of

firearms in locked vehicles parked in" the employee parking lot which is also

available for use by the public, thereby depriving the employees of an "inherent,

constitutional, fundamental right to transport and keep firearms"; (3) the district

court "erred in speculating the Oklahoma Supreme Court would approve of the

discharge of an at-will employee for the lawful exercise of his inherent,

constitutional, and fundamental right to transport [and] keep" firearms in his

vehicle; (4) the district court erred in finding plaintiffs' Fourth Amendment rights

were not violated because Weyco's search of plaintiffs' vehicles "was a

governmental search . . . by reason of [the] crucial participation by" Sheriff

Willeby; and (5) the district court erred in denying plaintiffs' claims for false

imprisonment and invasion of privacy. [6] Appellants' Br. at 1-2.

## 1. Constitutionality of Okla. Stat. tit. 21, § 1290.22 (2001)

The Oklahoma Constitution provides as follows:

---

[6]Plaintiffs make no argument in their opening brief about the district court's disposal of their claims for interference with business relations or negligence. We therefore consider those arguments waived. Plaintiffs also specifically aver, repeatedly, that they make no argument concerning the Second Amendment to the United States Constitution.

-10-

> The right of a citizen to keep and bear arms in defense of his home, person, or property, or in aid of the civil power, when thereunto legally summoned, shall never be prohibited; but nothing herein contained shall prevent the Legislature from regulating the carrying of weapons.

Okla. Const. art. 2, § 26. Invoking that provision of the Oklahoma Constitution, plaintiffs challenge the constitutionality of a section of the Oklahoma Self-Defense Act, Okla. Stat. Ann. tit. 21, §§ 1290.1-.26, titled "Business Owner's Rights," which provides as follows:

> Nothing contained in any provision of the Oklahoma Self-Defense Act . . . shall be construed to limit, restrict or prohibit in any manner the existing rights of any person, property owner, tenant, employer, or business entity to control the possession of weapons on any property owned or controlled by the person or business entity.

Okla. Stat. Ann. tit. 21, § 1290.22 (2002) (amended 2004). In March 2004, some sixteen months after the plaintiffs were terminated, the Oklahoma legislature amended that section of the Self-Defense Act so it includes the following additional provision:

> No person, property owner, tenant, employer, or business entity shall be permitted to establish any policy or rule that has the effect of prohibiting any person, except a convicted felon, from transporting and storing firearms in a locked vehicle on any property set aside for any vehicle.

Id. § 1290.22(B) (Supp. 2006);   see also id. § 1289.7a (Supp. 2004).  The effective

date for the amendment was November 1, 2004, although its enforcement has

been enjoined. [7]

In addition to the Oklahoma Self-Defense Act, plaintiffs in this case

invoke the Oklahoma Firearms Act of 1971, Okla. Stat. Ann. tit. 21,

§§ 1289.1-.26.  In particular, plaintiffs rely upon § 1289.7, which provides, in

relevant part, as follows:

> Any person, except a convicted felon, may transport in a motor vehicle a rifle, shotgun or pistol, open and unloaded, at any time. For purposes of this section "open" means the firearm is transported in plain view, in a case designed for carrying firearms, which case is wholly or partially visible, in a gun rack mounted in the vehicle, in an exterior locked compartment or a trunk of a vehicle.

> Any person, except a convicted felon, may transport in a motor vehicle a rifle or shotgun concealed behind a seat of the vehicle or within the interior of the vehicle provided the rifle or shotgun is not clip, magazine or chamber loaded.

---

[7]In October 2004, a group of employers filed suit against the Governor and the Attorney General of Oklahoma, challenging the constitutionality of the 2004 amendment and seeking to enjoin its enforcement.  Williams Cos. v. Henry, No. 04-CV-820 TCK-PJC (N.D. Okla. 2004).  The plaintiffs in Williams have requested a permanent injunction and a declaratory judgment prohibiting enforcement of the 2004 amendment.  They argue that the amendment results in an unconstitutional taking of private property without compensation; is unconstitutionally vague and overbroad; and is preempted by federal law and conflicts with existing state laws.  On November 3, 2004, the district court entered a temporary restraining order enjoining and prohibiting the state from enforcing the 2004 amendment.  See Appellants' App. at 592-94.  The parties subsequently agreed to extend the injunction until the case is resolved.

Okla. Stat. Ann. tit. 21, § 1289.7 (2002). A rifle or shotgun which is "clip or magazine loaded and not chamber loaded" may be transported "in an exterior locked compartment . . . or trunk" of a vehicle. Id. § 1289.13. This provision was amended in 2004 to allow such loaded firearms also to be carried "in the interior compartment of the vehicle." Id. (Supp. 2006). The 2004 amendment to the Oklahoma Firearms Act also added § 1289.7a, which provides language identical to the 2004 amendment to the Self-Defense Act:

> No person, property owner, tenant, employer, or business entity shall be permitted to establish any policy or rule that has the effect of prohibiting any person, except a convicted felon, from transporting and storing firearms in a locked vehicle on any property set aside for any vehicle.

Id. § 1289.7a(A) (Supp. 2004) (amended 2005). The effective dates for these amendments was July 1, 2004, and November 1, 2004, respectively. The latter amendment has also been enjoined and is under constitutional attack. A 2005 amendment has further modified that section so that it currently provides:

> No person, property owner, tenant, employer, or business entity shall maintain, establish, or enforce any policy or rule that has the effect of prohibiting any person, except a convicted felon, from transporting and storing firearms in a locked motor vehicle, or from transporting and storing firearms locked in or locked to a motor vehicle on any property set aside for any motor vehicle.

Id. § 1289.7a(A) (Supp. 2006). The effective date for this last amendment was November 1, 2005.

-13-

Plaintiffs argue that art. 2, § 26 of the Oklahoma Constitution, along with the statutory provision, § 1289.7, state a "clear law of nature, federal, state, and inherent constitutional right of an at-will employee to keep and transport firearms in his vehicle." Appellants' Br. at 15-16. They further argue that this right "trumps" any right of a business entity like Weyco to restrict the possession of firearms on its property. Moreover, they assert that the pre-amendment version of § 1289.22, which was in effect at the time plaintiffs were terminated, provides no support for Weyco's firearms policy because the statute, by its terms, only protects the "existing rights . . . to control the possession of weapons" on its property, and Weyco had no "existing right" to do something which interferes with the fundamental and preeminent right to bear arms. [8] We disagree.

As the Oklahoma Constitution explicitly states, "nothing herein contained shall prevent the Legislature from regulating the carrying of weapons." Okla. Const. art. 2, § 26. The Oklahoma Supreme Court has held that "there is no absolute common-law or constitutional right to carry loaded weapons at all times and in all circumstances." State _ex rel._ Okla. State Bureau of Investigation v. Warren, 975 P.2d 900, 902 (Okla. 1998). Rather, "[a]n individual's right to keep

---

[8]In truth, it is difficult to discern the precise argument plaintiffs make about "existing rights" and how they differ from "vested rights." Plaintiffs' briefs are disorganized, rambling and at times virtually incoherent. We have endeavored to derive from those briefs the contours of plaintiffs' arguments.

and bear arms under a State Constitution . . . is not absolute, but remains subject to reasonable regulation under the State's police power."     Id. at 902-03.  The Oklahoma Legislature has similarly expressed the necessity of regulating the use of firearms in its "Legislative Findings for Firearms Act":

> The Legislature finds as a matter of public policy and fact that it is necessary for the safe and lawful use of firearms to curb and prevent crime wherein weapons are used by enacting legislation having the purpose of controlling the use of firearms, and of prevention of their use, without unnecessarily denying their lawful use in defense of life, home and property . . . including their use and transportation for lawful purposes.

Okla. Stat. Ann. tit. 21, § 1289.2 (2002).  Far from evincing an unfettered right to transport and use firearms, those statements by the Oklahoma courts, legislature and authors of the constitution reveal the limited nature of that right.  In our view, § 1290.22 of the Self-Defense Act, prior to its amendment in 2004, is an example of the kind of reasonable regulation of firearms contemplated by those statements. Weyco was acting under the authority of that section when it applied its no-firearms policy to plaintiffs' vehicles. [9]

Plaintiffs attempt to avoid the application of § 1290.22 by arguing that the 2004 amendment to §§ 1290.22 and 1289.7 is "a curative statute that has

---

[9]We note that, to the extent plaintiffs rely upon § 1289.7 and/or § 1289.13 as the basis for their right to carry weapons in their vehicles, plaintiffs have not demonstrated that the manner in which they carried the firearms complied with the requirements of those sections.

retroactive effect." Appellants' Br. at 25. They make the same argument with respect to the 2005 amendment to § 1289.7a. "As a general rule, statutes and statutory amendments will be construed as operating prospectively unless by express declaration or necessary implication from the language used the Legislature clearly demonstrates a contrary intent. If there is any doubt, it must be resolved against retroactivity." Dolese Bros. v. State *ex rel*. Okla. Tax. Comm'n, 64 P.3d 1093, 1097 (Okla. 2003) (citations and footnote omitted). The Oklahoma legislature provided an effective date for both of those amendments. That is a clear legislative statement that the amendments are only applicable from that date forward. They accordingly do not have retroactive effect. [10]

---

[10]Plaintiffs ask us to certify various questions to the Oklahoma courts. While they are vague about the precise question or questions they wish us to certify, at oral argument of this case, plaintiffs' counsel suggested that we certify the question of whether §§ 1289.7 and 1290.22, or whether more generally the Oklahoma Firearms Act and the Oklahoma Self-Defense Act, are in conflict. Because we perceive no conflict between the two sections or between the two Acts, and because we are confident that the Oklahoma courts would perceive no conflict, we decline plaintiffs' request to certify that question to the Oklahoma courts.

Plaintiffs also appear to seek certification on the question of whether Oklahoma law permits the discharge of an at-will employee for the "lawful exercise of his inherent, constitutional, and fundamental right to transport, keep in his locked vehicle in a company parking lot [firearms]. . . in violation of the well-established public policy right provided for by the Oklahoma Legislature which trumps private property rights." Appellants' Br. at 1-2. Because we find Oklahoma law to be clear on this point, we decline to certify this or any other question.

## 2. Restrictions on firearms in employee parking lot

While plaintiffs list this as a separate issue in their brief, it is essentially a reiteration of their first issue discussed above. We have concluded that § 1290.22 as written at the time of plaintiffs' terminations, which authorizes Weyco to restrict the bringing of firearms onto its property, including the employee parking lot, is constitutional. The fact that the public is permitted to use the parking lot does not diminish its status as property belonging to Weyco. Weyco did not unlawfully infringe upon any right of plaintiffs in enforcing its no-firearms policy.

## 3. Wrongful discharge in violation of public policy

The district court described this issue as "whether a public policy cause of action for wrongful discharge may be maintained by Plaintiffs based upon the right to keep arms espoused by the Oklahoma Constitution." Order at 23, Appellants' App. at 627. [11] As the district court acknowledged, Oklahoma law recognizes a public policy exception to the otherwise virtually unfettered ability of an employer to terminate an at-will employee. "[T]he circumstances which present an actionable tort claim under Oklahoma law is where an employee is

---

[11]Plaintiffs discuss the first three issues under one omnibus heading. That makes it difficult to separate the various strands of the argument as listed in their statement of issues. Nonetheless, to the extent plaintiffs present separate and distinct arguments, we have attempted to discuss them separately.

-17-

discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Burk v. K-Mart Corp., 770 P.2d 24, 29 (Okla. 1989). The Oklahoma Supreme Court has, however, cautioned that this "unique tort" applies "to only a narrow class of cases and must be tightly circumscribed." Clinton v. State *ex rel.* Logan County Election Bd., 29 P.3d 543, 545 (Okla. 2001).

While the Oklahoma courts have not addressed the precise question of whether there is a clear and compelling public policy involving the right to bear arms, such that an at-will employee [12] may not be terminated when he exercises that right, we are confident that those courts would not embrace that view. As indicated, both the Oklahoma Constitution and the Oklahoma courts recognize that the right to bear arms is not unlimited, and, indeed, may be regulated. We agree with the district court that "[g]iven the finding by [the Oklahoma Supreme] Court that the right to keep arms is not unfettered, establishing a wrongful discharge tort for exercising a statutorily sanctioned restriction on the right would be counterintuitive." Order at 24, Appellants' App. at 628.

4. Search of vehicles

---

[12]We recognize that only plaintiff Wyatt was actually an employee of Weyco and he was thus the only plaintiff terminated by Weyco. The remaining plaintiffs were terminated by KBR and/or Kenny Industrials. That is another reason why the public policy exception to at-will employment is unavailing in this case.

Plaintiffs argue that the search of their vehicles violated their Fourth Amendment right to be free from unreasonable searches and seizures. They invoke 42 U.S.C. § 1983. "To state a claim under § 1983, Plaintiffs must allege that they were deprived of a right 'secured by the Constitution and laws' of the United States and that this deprivation was committed under color of state law." Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207 (10th Cir. 2005) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). They allege they have satisfied the "color of law" requirement because Sheriff Willeby had some involvement in the search.

Our circuit has recognized four tests to be used to determine whether conduct by private, non-state individuals is chargeable to the state. The district court carefully and thoroughly examined each of the four tests in the context of this case and determined that the Weyco personnel who conducted the search were not acting under color of state law. We affirm that conclusion, for substantially the reasons set out in the three orders issued by the district court.

### 5. False imprisonment and invasion of privacy

Plaintiffs argue that they were threatened with termination if they did not give permission for their vehicles to be searched. They argue that caused them to be unlawfully detained and thereby subject to false imprisonment. They also allege that the search itself was an invasion of their privacy.

The district court also thoroughly analyzed these claims, considering whether plaintiffs had established the elements of each claim under Oklahoma law. It concluded that they had not. We affirm those conclusions, for substantially the reasons set forth in the district court's three orders granting summary judgment to Weyco. [13]

## CONCLUSION

We have considered all of plaintiffs' arguments and, for the foregoing reasons, we AFFIRM the district court's orders granting summary judgment to Weyco on all of plaintiffs' claims.

---

[13]Plaintiffs attempt to raise in their reply brief an issue about drug testing and to revive their claim relating to interference with business relations. In addition to being raised for the first time in their reply brief, which alone is grounds for not addressing them, these issues are meritless.