**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WEYERHAEUSER COMPANY,

Plaintiff-Appellant,

v.

JIMMIE WYATT and LAWRENCE A.
G. JOHNSON,

Defendants-Appellees.

No. 06-7096

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CIV-06-268-FHS)**

---

William S. Leach (Alison A. Verret, with him on the briefs), Eldridge Cooper
Steichen & Leach, PLLC, Tulsa, Oklahoma, for Plaintiff-Appellant.

Lawrence A. G. Johnson, Tulsa, Oklahoma, for Defendants-Appellees.

---

Before **McCONNELL**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Weyerhaeuser Company appeals the dismissal of its federal suit to enjoin

state court proceedings for breach of contract against it. We conclude that,

because the parties actually litigated and the district court decided the claim for

breach of contract in prior litigation, the Anti-Injunction Act, 28 U.S.C. § 2283, did not deprive the court below of authority to enjoin the state proceedings and that the court erred in granting the motion to dismiss.

## I. BACKGROUND

Weyerhaeuser Company owns and operates a mill facility in Valliant, Oklahoma, where Jimmie Wyatt served as an at-will employee. In the fall of 2002, Weyerhaeuser became concerned about possible substance abuse problems among mill workers and arranged for canine inspections of the facility. While a search of the parking lot was occurring, Mr. Wyatt attempted to leave the mill. Weyerhaeuser personnel informed him that he could not depart until his vehicle was searched, at which point Mr. Wyatt told them that he had a firearm in the vehicle. An ensuing search of his vehicle uncovered the firearm, and Weyerhaeuser subsequently dismissed Mr. Wyatt for violating a company policy banning firearm possession on company grounds. The issue in this appeal arises from a series of lawsuits filed in relation to this dismissal.

### A. Case No. 02-627

After his dismissal, Mr. Wyatt sued Weyerhaeuser in Oklahoma state court, alleging both state and federal claims. Weyerhaeuser removed the case to the United States District Court for the Eastern District of Oklahoma, where it became Case No. 02-627 and was assigned to a magistrate judge upon consent of the parties. The original complaint contained a number of claims, but did not

contain a breach of contract claim. On December 17, 2002, the parties submitted a "Report on Planning Meeting," which listed as one of the causes of action in the case a breach of contract claim based on severance payments Weyerhaeuser allegedly owed to Mr. Wyatt. On March 3, 2003, Mr. Wyatt served an amended complaint, which included the breach of contract claim.[1] On July 3, 2003, Weyerhaeuser moved for summary judgment, though it did not include the contract claim in its motion. The district judge ordered the parties to address the contract claim, as well as other issues, in supplemental briefing. The parties completed that briefing on December 8, 2003.

On March 28, 2004, the magistrate judge issued an order granting summary judgment for Weyerhaeuser, declaring "that Weyerhaeuser Company's Motion for Summary Judgment filed July 3, 2003 . . . is hereby GRANTED. Accordingly, all claims asserted against Defendant in this action are hereby DISMISSED." Appellant's App. 254. The order explicitly delineated and discussed some of the claims raised by Mr. Wyatt, but did not discuss the breach of contract claim.[2] Mr. Wyatt appealed the grant of summary judgment to this Court without listing the

---

[1] In its order in this case, the district court noted that the record in Case No. 02-627 does not contain a copy of the amended complaint, nor a docket entry for March 3, 2003. Both parties, however, maintain that the complaint was filed, *see* Appellant's Br. 5–6; Appellee's Br. 1, and the record contains Weyerhaeuser's answer to the amended complaint, *see* Appellant's App. 9 (Docket Entry # 21).

[2] Wyatt's claims for negligence and for invasion of privacy were mentioned once in the district court's exposition of the facts of the case, but never discussed again.

contract issue in his questions presented or discussing it in his brief. We affirmed the grant of summary judgment in its entirety, without making reference to any breach of contract claim. *See Bastible v. Weyerhaeuser Co.*, 437 F.3d 999 (10th Cir. 2006).

On March 23, 2006, Mr. Wyatt filed a motion to reopen the case on the breach of contract claim. A few weeks later, on April 13, 2006, he withdrew the motion and "elect[ed] to proceed in state court." Appellant's App. 272.

**B. Case No. 06-212**

Also on April 13, Mr. Wyatt filed a second suit against Weyerhaeuser in Oklahoma state court, asserting only his breach of contract claim (Case No. CJ-06-212). Weyerhaeuser again removed the case to federal court, and then moved to consolidate it with Case No. 02-627. The magistrate judge denied the motion on the grounds that No. 02-627 was already closed. Because Mr. Wyatt thereafter stipulated that the amount in controversy was less than $75,000, the district court found that it lacked subject matter jurisdiction and remanded the case to state court.

**C. Case No. 06-268**

On July 6, 2006, Weyerhaeuser filed the complaint in the present suit—Case No. 06-268—asking the federal district court to (1) issue a declaratory judgment stating that the March 28, 2005, order disposed of the contract claim, and (2) use its power to protect and effectuate its judgments to enjoin the pending

-4-

state suit and all future litigation by Mr. Wyatt arising from his termination. Mr. Wyatt responded by filing a motion to dismiss, which the district court granted. The court noted that under the Anti-Injunction Act ("AIA") a federal court may enjoin state court proceedings "to protect or effectuate its judgments." 28 U.S.C. § 2283. Citing to this Court's decision in *Brooks v. Barbour Energy Corp.*, 804 F.2d 1144, 1146 (10th Cir. 1986), the district court found that this power extends only to "state court proceedings involv[ing] issues which the federal court 'fully adjudicated on the merits.'" Appellant's App. 323 (quoting *Brooks*, 804 F.2d at 1146). The court found it "abundantly clear that Wyatt's breach of contract claim was never adjudicated on its merits." *Id.* at 324. Rejecting Weyerhaeuser's argument that the magistrate judge's statement dismissing "all claims asserted against the Defendant" meant *all* claims, the court found instead that the statement referred to all claims that the magistrate judge had "painstakingly set forth in her detailed order" and could not be said to encompass the breach of contract claim. *Id.* The court concluded that the contract claim simply "'fell through the cracks.'" *Id.*

Weyerhaeuser appeals the order of dismissal.

## II. DISCUSSION

### A. The Scope of the Anti-Injunction Act's Relitigation Exception

-5-

The Anti-Injunction Act provides that a federal court "may not grant an injunction to stay proceedings in a State court" except in three circumstances: "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This case concerns the scope of the third circumstance, commonly known as the relitigation exception. Specifically, the question presented is whether the relitigation exception permits a federal court to protect and effectuate the full res judicata effect of its judgments—that is, to bar state litigation of both claims actually raised in a prior federal action and those that could have been raised[3]—or whether it covers only issues that the federal court actually decided.

1.

For enlightenment on this question, we turn to the Supreme Court's opinion in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988). The case began when Leong Chong, a Singapore resident, was accidentally killed in that country while repairing a ship owned by Exxon. Chick Kam Choo, Chong's widow, sued Exxon in federal district court, asserting claims under the Jones Act, the Death on the High Seas Act, general federal maritime law, and the Texas wrongful death statute. *Id.* at 142. The district court granted summary judgment in Exxon's

_____

[3] In federal court, "res judicata, or claim preclusion, . . . prevent[s] a party from relitigating a legal claim that was or *could have been* the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (emphasis added).

favor on the federal statutory claims, finding them inapplicable to Mr. Chong. *Id.* at 143. The court further concluded that, under federal choice-of-law principles, Singapore law must control the lawsuit. Accordingly, the court granted summary judgment on the general maritime law claim and dismissed the remainder of the case on *forum non conveniens* grounds. *Id.* But instead of refiling the unadjudicated claims in Singapore, Ms. Choo filed suit in Texas state court, alleging the state law claim and a claim under Singapore law. *Id.* In response, Exxon brought a new action in federal court, wherein it procured an injunction barring Ms. Choo from "commencing any . . . claims against [defendant] in the courts of . . . any . . state . . . arising out of or related to the alleged wrongful death" of her husband. *Id.* at 144. Ms. Choo appealed, contending that the injunction ran afoul of the Anti-Injunction Act.

In deciding the case, the Supreme Court first explained the purpose of the AIA. The law "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." *Id.* at 146. By prohibiting "frequent federal court intervention" in state court proceedings, the AIA "forestalls . . . 'friction between the state and federal courts.'" *Id.* (quoting *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630–31 (1977)). But given the ultimate need "to ensure the effectiveness and supremacy of federal law" within this dual system, the AIA contains the above-noted exceptions. *Id.* Specifically, "[t]he relitigation exception was designed to permit

a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of *res judicata* and collateral estoppel." *Id.* at 147.

The Court turned to its prior decision in *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970), as the "best illustrat[ion]" of the relitigation exception's "proper scope." *Chick Kam Choo*, 486 U.S. at 147. In that case a railroad sought a federal injunction to prevent union picket activities. *Id.* The federal court refused, holding that "the unions were 'free to engage in self-help.'" *Id.* (quoting *Atlantic Coast Lines*, 398 U.S. at 289). The railroad then turned to state court, where it procured the desired injunction. Two years later, in an unrelated case, the Supreme Court held that federal statutory law prohibited state court injunctions of the type issued in favor of Atlantic Coast Lines. Accordingly, the union returned to federal district court and procured an injunction against enforcement of the original state court injunction. The federal district court read its earlier order as concluding that federal law preempted state interference with union self-help. The Supreme Court reversed, finding that the district court had no authority to issue the injunction. *Id.* It rejected the district court's reading of the earlier order, finding that the "'point [was] never argued to the court, [and] there [was] no language in the order that necessarily implies any decision on that question.'" *Id.* at 148 (quoting

*Atlantic Coast Line*, 398 U.S. at 290). In light of this holding, the *Chick Kam Choo* Court concluded:

> an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings *actually have been decided by the federal court.* Moreover, *Atlantic Coast Lines* illustrates this prerequisite is strict and narrow. The Court assessed the precise state of the record and what the earlier federal order actually said; it did not permit the District Court to render a *post hoc* judgment as to what the order was *intended* to say.

*Id.* (first emphasis added).

Applying this rule to Ms. Choo's case, the Court concluded that because Texas and federal *forum non conveniens* law differ, the issue of "whether the Texas *state* courts are an appropriate forum for petitioner's Singapore law claims ha[d] not yet been litigated, and an injunction to foreclose consideration of that issue [was] not within the relitigation exception." *Id.* at 149. In contrast, because the district court concluded that Singapore law must apply to the case—"a decision that necessarily preclude[d] the application of Texas law"—"the validity of this claim was adjudicated in the original federal action." *Id.* at 150. Accordingly, the relitigation exception permitted a federal injunction on that issue. *Id.* at 150–51.

2.

Since *Chick Kam Choo*, this Court has dealt with the AIA's relitigation exception three times,[4] but we have never squarely addressed its scope.[5] We do so now and, like the vast majority of circuits that have explicitly[6] or implicitly[7] considered this issue, conclude that *Chick Kam Choo* leaves little room for doubt: the AIA's third exception does not authorize a federal court to protect the full res judicata effect of its decisions. Instead, it authorizes injunctions against state

---

[4]*See Bailey v. State Farm Fire & Cas. Co.*, 414 F.3d 1187 (10th Cir. 2005); *Smith v. Plati*, 258 F.3d 1167 (10th Cir. 2001); *Ute Indian Tribe v. Utah*, 114 F.3d 1513 (10th Cir. 1997).

[5] The magistrate judge relied on *Brooks*, 804 F.2d 114, a Tenth Circuit case decided two years before *Chic Kam Choo*. We are not convinced that *Brooks* unequivocally endorsed the narrower conception of the relitigation exception, *see id.* at 1146 ("Because a dismissal with prejudice by order of the court is a judgment on the merits, we hold that a federal court can enjoin a state court proceeding adjudicating an action dealing with the same transaction or occurrence that was the subject of the dismissed cause."), but the question need not detain us. To the extent *Brooks* might contradict *Chick Kam Choo*, it is no longer good law.

[6]*In re G.S.F. Corp.*, 938 F.2d 1467, 1478 (1st Cir. 1991), *abrogated on other grounds by Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *Farias v. Bexar County Bd. of Trustees*, 925 F.2d 866, 879–80 (5th Cir. 1991); *LCS Servs., Inc. v. Hamrick*, 925 F.2d 745, 749 (4th Cir. 1991); *Am. Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 112 n.2 (6th Cir. 1990); *Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 (2d Cir. 1989).

[7]*See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 364 (3d Cir. 2001); *In re Deist Forest Prods., Inc.*, 850 F.2d 340, 341 (7th Cir. 1988); *Derrickson v. City of Danville*, 845 F.2d 715, 723 (7th Cir. 1988); *Thomas v. Powell*, 247 F.3d 260, 263 (D.C. Cir. 2001). The Eighth Circuit does not appear to have a clear position on the issue. *See Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1015 (8th Cir. 2002); *In re SDSS*, 97 F.3d 1030, 1038–40 (8th Cir. 1996).

adjudication of issues that "actually have been decided by the federal court." *Chick Kam Choo*, 486 U.S. at 148.

The Ninth Circuit appears to be the only circuit that has rejected the majority reading of *Chick Kam Choo* and continues to apply the broader conception of the relitigation exception. *See W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 868–71 (9th Cir. 1992). Some commentators have also taken issue with the majority view. *See, e.g.*, 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice and Procedure § 4226, at 120 n.22 (3d ed. 2007) ("The *Chick Kam Choo* opinion is ambiguous and does not show that a distinction between claim preclusion and issue preclusion was really considered or intended."); George A. Martinez, *The Anti-Injunction Act: Fending Off the New Attack on the Relitigation Exception*, 72 Neb. L. Rev. 643 (1993) (criticizing the majority view of *Chick Kam Choo* and suggesting an alternative reading of the case and the AIA). Admittedly, the *Chick Kam Choo* opinion contains language pointing both ways. The Court broadly stated that the relitigation exception is rooted "in the well-recognized concepts of *res judicata* and collateral estoppel." 486 U.S. at 147. Given that res judicata extends beyond claims actually decided and includes those that could have been raised, *MACTEC*, 427 F.3d at 831, this statement might be seen to conflict with the opinion's later statement that the exception applies only to "claims or issues . . . actually . . .

-11-

decided by the federal court." *Chick Kam Choo*, 486 U.S. at 148. As the Ninth

Circuit explained:

> To read *Choo* as the other Circuits have . . . would in essence be to read res judicata entirely out of section 2283. Any issue which was "actually litigated" by the parties in a prior proceeding will be barred by collateral estoppel ("issue preclusion"), without any need to rely on res judicata ("claim preclusion").

*Ulloa*, 958 F.2d at 870. Be that as it may, we think *Chick Kam Choo*'s specific

explication of the scope of the relitigation exception, along with the case's actual

outcome (and that of *Atlantic Coast Lines*), leads to the conclusion that the

relitigation exception does not encompass all aspects of claim preclusion.

Whether or not this is the best interpretation of the statute, and whether or not this

limitation undermines the rights that are supposed to attach to a federal judgment,

*see* Martinez, *supra*, at 662–79, *Chick Kam Choo* says what it says, and we must

follow it.

In any event, we believe this interpretation is consistent with the dual

purposes of the AIA: to respect comity while also "ensur[ing] the effectiveness

and supremacy of federal law." *Chick Kam Choo*, 486 U.S. at 146. When a

federal court affirmatively decides an issue, that decision is entitled to respect and

finality. But when a federal court has not passed on a specific claim, the main

concern raised by subsequent state litigation is harassment of the opposing party.

That concern is not to be taken lightly, but it is the province of res judicata, a

defense that a party is free to raise in the subsequent state-court suit, *see Staffer*,

-12-

878 F.2d at 643 ("Here, the proper forum for a complete investigation of the res judicata effects of the district court's judgment is the state court . . . .")—and that the state courts "are presumed competent to resolve," *Chick Kam Choo*, 468 U.S. at 150.

## B. Was the Breach of Contract Issue "Actually Litigated and Decided"?

In this case, then, the question becomes whether the parties litigated and the district court actually decided the breach of contract issue. "Assessing the precise state of the record and what the earlier federal order actually said," *Chick Kam Choo*, 486 U.S. at 148, we conclude that it did.

Wyatt included a breach of contract claim in his amended complaint. When Weyerhaeuser moved for partial summary judgment on some of Wyatt's claims, the district court ordered Weyerhaeuser to file an "additional summary judgment motion encompassing the issues of breach of contract [and several other issues]" App. 49. Weyerhaeuser filed a supplemental brief, expanding its motion for summary judgment to include "Plaintiff's contract claim, Plaintiff's alleged claims under 42 U.S.C. § 1983, and Plaintiff's invasion of privacy claims." App. 51. Wyatt responded, arguing that factual issues precluded summary judgment. Thus, the parties actually litigated the contract claim.

Whether the district court actually decided the contract claim presents a closer question. Although the district court's order stated that it was dismissing

"all claims asserted against Defendant in this action," App. 254, the order explicitly discussed only some of the claims brought against Weyerhaeuser while conspicuously failing to mention the breach of contract claim, and mentioning once but then failing to discuss the negligence claim or the invasion of privacy claim. In our view, this creates sufficient ambiguity regarding the reach of the decision that we must consult the surrounding context for clarification.

We note first that the district court specifically requested briefing on the contract issue, stating that this briefing would enable it to "render[]a decision on all pending motions." App. 49. This makes it more likely that the court meant precisely what it said – that it was dismissing "all claims" asserted by Wyatt.

This conclusion is strengthened by the conduct of the parties. If there had been any doubt that all of the litigated claims were included by the court's dismissal of "all claims," Wyatt could have asked the district court to reconsider the scope of its order dismissing "all claims" to exclude the contract claim. But Wyatt does not appear to have regarded the order as ambiguous. Instead, he appealed, representing to this court that "[t]he Circuit's jurisdiction is an appeal from final order entered March 28, 2005 disposing of all parties' claims." Aplt. Br. at 6, *Bastible v. Weyerhaeuser Co.*, No. 05-7037 (10th Cir. June 21, 2005). He thus construed the district court's order as a final "judgment" under Rule 54(a), which necessarily means the district court's order resolved all the claims before it. *See* Fed. R. Civ. P. 54(b) (directing that an order is not final and

-14-

appealable if it "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"). If the district court's order had left one of Wyatt's claims undecided, Wyatt could not have appealed that order without first seeking certification under Rule 54(b). Because Wyatt took the position that the district court's order resolved all claims and successfully invoked the jurisdiction of the appellate court on the basis of that interpretation of the order, we are inclined to resolve any ambiguity against his new and contradictory interpretation.

Wyatt claims that he treated the previous order as final because the court had declined pendent jurisdiction and thus dismissed the state law claims without prejudice. This is not the best reading of the record. Our duty is to examine "what the earlier federal order actually said," *Chick Kam Choo*, 486 U.S. at 148, and it does not give any reason to suspect that the court declined pendent jurisdiction over the contract claim. After all, the court decided other state law claims by Wyatt, such as his claim for false imprisonment. Wyatt also appealed to us (and therefore treated as decided) his state law claim for invasion of privacy even though that claim was in a similar procedural posture: both claims arose under state law, both were added to the expanded motion for summary judgment, and both were dismissed by the court's order to dismiss "all claims," even though the court did not discuss either claim separately in the order.[8]

---

[8]The district court did *mention* the existence of the false imprisonment claim once, in describing the facts of the case, but the court never analyzed or discussed the

(continued...)

On the basis of the text of the district court's order, the conduct of the parties, and an examination of the record, we conclude that the parties litigated, and the court decided, Wyatt's claim for breach of contract. It follows that the Anti-Injunction Act permits the district court to enjoin the relitigation of that claim in state court.

### III. CONCLUSION

We **REVERSE** the order of the district court and **REMAND** for it to decide whether to grant Weyerhaeuser's request for an injunction.

---

[8](...continued)
claim in its order.