*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GARY PLONA,

           *Plaintiff-Appellant,*

     *v.*

UNITED PARCEL SERVICE, INC.,

           *Defendant-Appellee.*

No. 08-3512

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-01144—Ann Aldrich, District Judge.

Argued: January 14, 2009

Decided and Filed: March 6, 2009

Before: SUHRHEINRICH, GILMAN, and WHITE, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Michael T. Conway, MICHAEL T. CONWAY AND CO., Brunswick, Ohio, for Appellant. Margaret M. Koesel, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellee. **ON BRIEF:** Michael T. Conway, MICHAEL T. CONWAY AND CO., Brunswick, Ohio, for Appellant. Margaret M. Koesel, Nicole J. Quathamer, PORTER, WRIGHT, MORRIS & ARTHUR, Cleveland, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

RONALD LEE GILMAN, Circuit Judge. Gary Plona was fired from his job with United Parcel Service (UPS) for violating UPS's policy that prohibits employees from possessing firearms on its premises. This caused him to sue UPS in federal court, alleging wrongful discharge in violation of the public policy embodied in Article I, § 4 of the Ohio Constitution, which guarantees Ohio citizens the right to bear arms for their defense and security. The district court granted summary judgment in favor of UPS, holding that Plona

1

had failed to demonstrate that a clear public policy had been jeopardized by his discharge. In his timely appeal, Plona challenges the district court's grant of summary judgment to UPS, as well as its denial of his motion for discovery sanctions against his former employer. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.       Factual background**

Plona worked at a UPS package-sorting facility in Cleveland, Ohio. He routinely parked his car in an adjoining parking lot owned by BT-OH, LLC, a wholly owned subsidiary of UPS. UPS has a lease with BT-OH that provides UPS the right to exercise full control over the lot.

In accordance with written company policy, UPS prohibits its employees from possessing firearms while on its property. Specifically, the UPS Position on Alcohol, Illegal Drugs, and Weapons provides: "All UPS employees are prohibited from using or possessing a firearm . . . while on UPS property or while conducting official UPS business. This includes, but is not limited to: UPS vehicles, facilities (including *parking lots*, customer premises, etc.) and while on duty or during personal breaks." (Emphasis added.) Plona had previously signed an acknowledgment form stating that he was aware of this policy.

In April 2006, sheriff's deputies conducted a K-9 unit search of cars in the parking lot after UPS contacted them about a package containing possible contraband. During the search, one of the dogs identified Plona's car as a vehicle to inspect. Plona consented to the search and informed the sheriff's deputies that he had a firearm in the vehicle. The deputies found a .22 caliber Luger pistol under the front seat and its empty ammunition magazine in the glove compartment. Plona did not have a permit to carry a concealed weapon and had not registered the pistol. The deputies confiscated the weapon and reported their findings to UPS. Two UPS officials then met with Plona, who conceded that he was aware of UPS's weapons policies and admitted that he had knowingly left the pistol in his car. The UPS officials accordingly discharged Plona, effective immediately.

**B.       Procedural background**

Plona subsequently filed a lawsuit against UPS in federal court, alleging wrongful discharge. He claimed that his firing was in violation of the public policy regarding firearms embodied in Article I, § 4 of the Ohio Constitution.  After the conclusion of discovery, UPS moved for summary judgment.  In his response, Plona contended for the first time that UPS did not own the parking lot in which his car had been parked.  UPS then searched for and located its lease with BT-OH, which had not been specifically requested in discovery, and cited the lease in its reply brief.  Plona did not seek permission to file a sur-reply brief or to reopen discovery; he instead responded with a motion for sanctions and to disqualify opposing counsel.  The district court denied Plona's motion for sanctions and granted summary judgment in favor of UPS.  It held that Plona could not demonstrate that a clear public policy had been jeopardized by his discharge.  With regard to Plona's motion for sanctions, the court held that UPS's late production of the parking lot lease was excusable and did not prejudice Plona.  This timely appeal followed.

## II.  ANALYSIS

**A.       Standard of review**

We review de novo a district court's grant of summary judgment.  *Int'l Union v. Cummins*, *Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).  Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

We review the denial of a motion for sanctions for an abuse of discretion.  *United States v. Allen*, 516 F.3d 364, 374 (6th Cir. 2008).

**B.      Wrongful termination claim**

Plona alleges that UPS wrongfully discharged him in violation of public policy. Ohio has traditionally adhered to the employment-at-will doctrine, which permits an employer to terminate an at-will employment relationship "for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an] employee's rights." *Painter v. Graley*, 639 N.E.2d 51, 55 (Ohio 1994) (citations and internal quotation marks omitted). But in *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981, 987 (Ohio 1990), the Ohio Supreme Court carved out an exception to the employment-at-will doctrine for situations where the employee's discharge contravenes public policy. To maintain a so-called *Greeley* claim, a plaintiff must establish: (1) the existence of a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the "clarity element"); (2) that a dismissal under circumstances similar to the plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element"); and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element"). *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-30 (Ohio 2002). The clarity and jeopardy elements are questions of law to be decided by the court. *Id.*

Here, Plona asserts that the "clear public policy" at issue is manifested in the Ohio Constitution, Article I, § 4, which states that "[t]he people have the right to bear arms for their defense and security . . . ." He reasons that UPS violated this policy by terminating him for possessing an unloaded firearm in a parking lot that he characterizes as quasi-public property by virtue of its use by UPS customers and its ownership by a party other than UPS.

Plona's argument is without merit. Although the Ohio Constitution provides a general right to bear arms, the state certainly does *not* have a "clear public policy" of allowing employees to possess firearms on the premises of their private employers. To the contrary, the Ohio legislature has specifically provided that employers may limit their employees' rights to bear arms:

> Nothing in this section shall negate or restrict a rule, policy, or practice of a private employer that is not a private college, university, or other institution of higher education concerning or prohibiting the presence of

firearms on the private employer's premises or property, including motor
vehicles owned by the private employer.

Ohio Rev. Code § 2923.126(C)(1).

Plona does not dispute that the parking lot in question is owned by UPS's wholly
owned subsidiary BT-OH, or that the lease between UPS and BT-OH affords UPS full
control over the parking lot. UPS was thus plainly within its rights, as codified in
§ 2923.126(C)(1), to prohibit its employees from possessing firearms in the parking area.
Because Plona cannot show that UPS violated a clear public policy of the state of Ohio, his
wrongful-termination claim fails as a matter of law. *See, e.g.*, *Bastible v. Weyerhaeuser Co.*,
437 F.3d 999, 1001, 1007-08 (10th Cir. 2006) (rejecting constitutional and public-policy
wrongful-termination claims by employees who were fired because a police search revealed
firearms in the employees' cars, which were parked in a lot leased by their employer).

We further note that Plona's contentions on appeal reflect a misconception regarding
the role of the courts in this type of termination-of-employment action. Much of his efforts
are focused on showing that UPS's reasons for terminating him were "pretextual." Plona,
for example, argues that he had a reason to violate UPS's weapons policy because he had to
keep his pistol away from his suicidal estranged wife, that the unloaded and disassembled
weapon did not satisfy the statutory definition of a "firearm," that UPS did not properly post
signs warning of its policy, and that UPS applied its weapons policy inconsistently.

But Plona's sole cause of action in this lawsuit is for wrongful termination in
violation of public policy, a claim that we conclude is without merit. And even if we had
reached the opposite conclusion, the issue of whether UPS's stated reasons for Plona's
termination were pretextual is simply irrelevant in the absence of any allegations that he was
terminated due to some protected characteristic such as race, age, or disability. Plona's
"pretext" argument can be more accurately described as pertaining to the *fairness* of his
termination. As an at-will employee, however, Plona was subject to termination for any
legal reason, fair or unfair. *See DeCavitch v. Thomas Steel Strip Corp.*, 585 N.E.2d 879, 881
(Ohio Ct. App. 1990) ("[A]n employee may be terminated for a good reason, a bad reason
or no reason at all (unless specifically barred by statute)."). Our task, in other words, is to
determine whether an employer's actions are *illegal*—not whether they are fair. We
accordingly find no error in the district court's grant of summary judgment to UPS.

**C.     Motion for discovery sanctions**

Plona also appeals the district court's denial of his motion for sanctions, which he filed after UPS produced its lease with BT-OH following the close of discovery. We will assume for the sake of argument that UPS's reading of Plona's request for all documents relating to its ownership of the parking lot was unduly narrow. But UPS's late disclosure that it leased, rather than owned, the parking lot was immaterial with respect to the issue at hand. Plona was therefore not prejudiced by the late production of the lease, particularly because he made no showing that he would have proceeded any differently even if UPS had produced the lease earlier. Moreover, Plona never availed himself of the opportunity to seek leave to file a sur-reply brief or to reopen discovery to address the lease issue, even after UPS had indicated that it would not object to either request. The district court therefore did not abuse its discretion in denying Plona's motion for sanctions.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.